STATE OF MINNESOTA *vs.* KITTY SMITH.

June 7, 1882.

**Keeping House of Ill-Fame—General Repute.**—Upon a trial on an indictment for keeping a house of ill-fame, resorted to for purposes of prostitution, evidence of the general reputation of the alleged bawdy house is competent; at least, in aid of other evidence tending to show that the place was a bawdy house in fact.

**Same—Lewd Conduct of Defendant.**—It is competent for the prosecution to prove the lewd and indecent conduct of the defendant herself in the house, in presence of the inmates and visitors.

**Same.**—It is not necessary that the illicit intercourse be carried on for hire or gain. The offence consists in the public nuisance, and the form of the corrupt motive is immaterial

Appeal by defendant from an order of the district court for Ramsey county, *Brill*, J., presiding, refusing a new trial.

The instructions to the jury requested by defendant, and refused by the court, and referred to in the opinion, were the following:

(Second preliminary request.) "I ask the court to instruct the jury, with reference to the testimony of. the last witness, that if the jury believe this house was a house of prostitution, and that the defendant kept it, in that case the last witness was an accomplice in a felony, and that a conviction cannot be had upon her uncorroborated testimony."

(Second formal request.) "To constitute the offence charged against the defendant, there are three material ingredients : *First*, the defendant must be the actual keeper and manager of the house in question,— that is, the authority and control of it must rest in her and her alone ; *secondly*, the house must be proved to be a house of ill-fame; *thirdly*, it must be proved to have been, while under her management, resorted to by persons other than its inmates, for the purpose of prostitution. Unless these three several facts exist and are established to your satisfaction by the evidence in this case beyond a reasonable doubt, the defendant must be acquitted."

v.29—13

(Fifth.) "While isolated acts of impropriety or lewdness may be considered by the jury in arriving at a conclusion, they are not conclusive as to the character of the house; and unless they are shown to have been done with the knowledge, consent, and approval of the defendant, or in her presence, she cannot be convicted upon testimony of such occurrences alone."

(Sixth.) "Prostitution, as applied to the indictment in this case, is a common and promiscuous commerce of the sexes, illicitly had for the purpose of gain."

(Seventh.) "Acts of illicit intercourse between individuals of opposite sexes, not common or promiscuous, and not for gain or hire, is not *per se* and of itself prostitution."

(Eighth.) "Prostitution is the act or practice of prostituting or offering the person of a female to indiscriminate intercourse with men for hire. To constitute the offence of keeping a house of ill-fame, resorted to for the purpose of prostitution, it must be shown by the evidence beyond a reasonable doubt that the female inmates of such house, or some of them, were engaged in the acts and practice of offering their persons to indiscriminate intercourse with men for hire, and who must have resorted to the house for the purpose of such intercourse."

(Tenth.) "The jury are the exclusive judges of all questions of fact and of the credibility of all witnesses; and unless they are satisfied of the truth of the facts testified to by witnesses beyond a reasonable doubt, it is their duty to reject it. If the jury find or believe that any witness has wilfully testified falsely upon any material fact, they are at liberty to reject the entire testimony of such witness unless corroborated."

(Eleventh.) "The absence of testimony upon the part of the defence can raise no presumption of the defendant's guilt. It is the duty of the jury to weigh and consider the testimony produced upon the part of the state, and scrutinize it as fully and to the same extent as if the testimony of every witness upon the part of the state had been fully contradicted upon every point; and no private observation or belief on the part of any juror, not derived from the evidence

given on the hearing in this cause, can be considered in arriving at their verdict."

*O'Brien & Wilson,* for appellant, upon the point that evidence of mere reputation is incompetent in this case, cited *Morris* v. *State,* 38 Tex. 603; *State* v. *Lyon,* 39 Iowa, 379; *State* v. *Boardman,* 64 Me. 523; *People* v. *Manch,* 24 How. Pr. 276; *Com.* v. *Stewart,* 1 S. & R. 342.

*Wm. J. Hahn,* Attorney General, for the State, cited *Cadwell* v. *State,* 17 Conn. 467; *State* v. *Main,* 31 Conn. 572; *State* v. *Blakesley,* 38 Conn. 523; *State* v. *Morgan,* 40 Conn. 44; *State* v. *McDowell,* Dudley, (S. C.) 346; *State* v. *Brunell,* 29 Wis. 435; *O'Brien* v. *People,* 28 Mich. 213; *Morris* v. *State,* 38 Tex. 603; *Sylvester* v. *State,* 42 Tex. 496; *State* v. *Hand,* 7 Iowa, 411; *King* v. *State,* 17 Fla. 183; *Territory* v. *Chartrand,* 1 Dak. 379; *Territory* v. *Stone,* 4 N. W. Rep. 697; Wharton, Crim. Law, § 1451; 2 Bishop, Crim. Proc. §§ 113, 114.

MITCHELL, J. Upon a trial on indictment for keeping a house of ill-fame, resorted to for purposes of prostitution, evidence of the general reputation of the house is competent. The term "house of ill-fame" is no doubt a mere synonym for "bawdy house," having no reference to the fame of the place, but denoting the fact. Hence we do not assent to the position taken by counsel for the state that it is necessary to prove the repute of the house. Yet, in matter of evidence, proof of the fact may be aided by the fame. 1 Bishop, Crim. Law, § 1088; 2 Wharton, Crim. Law, § 1451; *O'Brien* v. *People,* 28 Mich. 213; *State* v. *Brunell,* 29 Wis. 435; *State* v. *McDowell,* Dudley, (S. C.) 346; *Morris* v. *State,* 38 Tex. 603. We are aware that there is some conflict of authority as to the competency of such evidence, and that its admission might seem in violation of the rule excluding hearsay evidence. The weight of authority, however, seems to be in favor of its competency. The difficulty in obtaining direct evidence in such cases has perhaps rendered its admission a necessity; and its receipt is not likely to operate unjustly, for it very rarely, if indeed ever, occurs that a place acquires the general reputation of being a bawdy house without being one in fact. We do not hold, however, that evidence of general reputation alone would be sufficient to establish the

character of the place. All that it is necessary to decide at present is that evidence of general reputation is competent in aid of other evidence as to the character of the house. In this case there was direct evidence of the lewd character and conduct of the inmates of the house, and of specific acts of lewdness on their part.

The court admitted in evidence, against the objection of defendant, a lease of the alleged bawdy house from the owner of the property to defendant, and executed by both parties. This, taken in connection with the other facts also shown in evidence that defendant was personally present and living in the house, and exercising acts of control over it and its inmates, was competent evidence tending to show that she was the keeper of the house.

Evidence of the personal lewd and indecent acts of defendant herself in the house, in presence of inmates and visitors, was competent as tending to show her knowledge of the character of the house, and her assent to its use as a house of ill-fame. *State* v. *Wells*, 46 Iowa, 662; *Mahalovitch* v. *State*, 54 Ga. 217.

There was no error in the refusal of the court to strike out the evidence of the witness McMahon as to the profane, indecent, and disorderly conduct of the inmates and visitors in the house on one occasion in the presence of defendant herself. It is always competent in such cases to show the character and conduct of inmates and visitors of the alleged bawdy house. The facts that defendant was present, and at the direction of the police officer subsequently got the disorderly visitors out of the house, were also competent as tending to show that she was the keeper and in control of the house, and assented to its use as a house of ill-fame.

The only other error complained of consists in the refusal of the court to give to the jury certain instruction, requested by defendant. Had these requests been all good law, there would have been no error in this refusal. The court had fully, fairly and clearly instructed the jury upon all points of law material to the case, and, that being the fact, the court was not bound to repeat it. But all of these requests were properly refused for other reasons. The second preliminary request was properly refused, because the mere fact that a female is an inmate of a house of ill-fame does not constitute her an accomplice

of the keeper in the crime of keeping the house. The second formal request, so far as it contains good law, was fully covered by the general charge; but it was vicious as a whole, because it requested the court to instruct the jury that to render the defendant the "keeper of the house," the authority and control of it must rest in her "and in her alone." This is not true as a proposition of law. The fifth request, which was refused, is so drawn that it was calculated to mislead and confuse the jury. The jury might naturally understand from its language that to render the defendant responsible for the use of the house for purposes of lewdness, she must have had actual immediate personal knowledge of the specific acts of lewdness, and given her express consent to them. The sixth, seventh and eighth requests were properly refused, if for no other reason, because they contain the proposition that to constitute the crime of keeping a house of ill-fame, resorted to for purposes of prostitution, the illicit intercourse of the sexes therein must be for purposes of gain or hire. This is no part of the offence described in the statute. The offence consists in the public nuisance, and the form of the corrupt motive is not material. 1 Bishop Crim. Law, § 1086; 2 Bishop Crim. Proc. §§ 108, 274; 2 Whart. Crim. Law, § 1457; *State* v. *Bailey*, 21 N. H. 343; *State* v. *Nixon*, 18 Vt. 70; *State* v. *Homer*, 40 Me. 438; *Com.* v. *Ashley*, 2 Gray, 356; *Com.* v. *Wood*, 97 Mass. 225.

It is difficult to determine what is meant by the tenth request, but we understand it to contain the proposition that if the jury are not satisfied beyond a reasonable doubt of the truth of the evidence of a witness, it is their duty to reject it. Of course such is not the law, and therefore the court properly refused to grant the request. The eleventh request was, to say the least of it, calculated to mislead the jury. It would seem to convey the idea that the uncontradicted and unimpeached evidence on behalf of the prosecution amounted to nothing more in weight than if it had been fully contradicted upon every point. If this be true, there could be no occasion for a defendant's introducing evidence in his own behalf in any case.

In answer to the point made that the verdict is not justified by the evidence, it is only necessary to say that we have rarely, if ever,

known of a case of this character where the evidence was so direct, clear, and full, either as to the character of the house, or to the fact that defendant was the keeper.

Order affirmed.