## STATE v. ELIZABETH PLANT.

### OCTOBER TERM, 1894.

*House of ill fame.  Keeping in two places.  Reputation not evidence.  Trial.  Cross-examination.*

1.  There cannot be a conviction, upon a single count, of keeping a house of ill fame at two different places, for the keeping at each place is a distinct offence.

2.  *State* v. *Nixon*, 18 Vt. 70, criticised.

3.  In a prosecution for keeping a house of ill fame, evidence of the reputation of the house is irrelevant and inadmissible, for

(*a*)  The words "ill fame" in the statute refer to the character of the place in fact and not to its repute, so that its reputation is not an element of the offence to be made out by the state ; and

(*b*) Reputation that the house is one of ill fame is not evidence tending to show that fact.

4. If a respondent may have been injured by the admission of irrelevant testimony, and it does not affirmatively appear that he was not, the judgment will be reversed.

5. The extent of the cross-examination upon a given subject is largely in the discretion of the trial court. *Held*, no error to refuse to permit further cross-examination in this case.

Indictment for keeping a house of ill fame. Trial by jury at the June term, 1894, Caledonia county, TYLER, J., presiding. Verdict and judgment of guilty. The respondent excepts.

*Dunnett & Nelson* for the respondent.

The keeping of different houses at different places constituted different offences, and evidence thereof could not be given under one count. Bacon's Abridgment, G. p. 84; *Janson* v. *Stewart*, 1 T. R. 754.

Evidence of reputation was inadmissible. *State* v. *Boardman*, 64 Me. 523; 2 Bish., Crim. Proc., ss. 112, 116; *Torrey* v. *State*, 60 Ala. 97; *State* v. *Lyon*, 39 Iowa 379; *Commonwealth* v. *Stuart*, 1 S. & R. 341; *United States* v. *Jourdin*, 4 Cranch C. C. 338; *State* v. *Foley*, 45 N. H. 466.

*Henry C. Bates*, State's Attorney, for the state.

Evidence of reputation that the house was one of ill fame was not only competent, but necessary. *Caldwell* v. *State*, 17 Conn. 467; 1 Bish., Crim. Law, s. 1039; *State* v. *Hand*, 7 Iowa 411.

The respondent may be convicted of carrying on the business at different places continuously during the time alleged. *State* v. *Nixon*, 18 Vt. 70; *Com.* v. *Shea*, 150 Mass. 314.

ROWELL, J.    The prisoner is informed against in one count for keeping a certain house of ill fame at St. Johnsbury on such a day and on divers other days and times between that day and the day of the filing of the information.

On trial the state first introduced evidence to prove the keeping of such a house in a certain building on a certain street in the village of St. Johnsbury, within the time alleged.    It was then allowed to introduce evidence to prove the keeping by the prisoner of two other such houses on a certain other street in said village at different times before the time alleged, and the keeping of one of them again after the keeping of the one first mentioned, within the time alleged, and to use such evidence as further and substantive ground for conviction, on the theory that the crime is cumulative to an extent to warrant that.

Now the gist of this crime is the keeping of the house, and although the crime may have continuance by the repetition of the conduct that gives character to the house, yet that continuity may be broken so that separate and distinct offences will be committed ; and it is thus broken when the business is given up at one place and resumed at another and a different place, for then the keeping of the former house is completed and ended, and as the keeping is the gist of the crime, the crime itself is equally completed and ended, and the resumption of the business at the other place is a separate and distinct keeping, and so a separate and distinct crime, and there are as many crimes as there are separate and distinct keepings of separate and distinct houses, and for the purposes of this case, we will say at separate and distinct, though successive, times.    There is nothing in the nature of the offence opposed to this view, which is supported b / *State* v. *Lee*, 80 Iowa 75 ; 20 Am. St. Rep. 401 ; which was an indictment in one count for keeping a house of ill fame.    During the trial the prisoner asked that the state be compelled to elect whether it would proceed on the theory

that the house of ill fame was located in the first story of the building occupied by the prisoner or the second story; but it was held that all the rooms were properly treated as constituting but one building, and that therefore the court properly refused to compel the state to elect.

A house of ill fame is a nuisance at common law, for it holds out allurements to a miscellaneous and common bawdry, corrupting to the public morals; and nuisances, though successive and alike in kind are distinct in offence. A man erects a nuisance on a public street, and continues it there for a time. He commits an offence. He abates that nuisance, and straightway erects another like it on another street. He commits another offence.

But it is said that *State* v. *Nixon*, 18 Vt. 70, is opposed to the view we take. That was an indictment in one count for keeping a house of ill fame at Burlington on such a day and on divers other days and times between that day and the day of taking the inquisition. On motion in arrest it was objected that the indictment was insufficient, for that the local situation of the house was not stated nor even sufficiently alleged to be in any town or county. The court said that the offence is local, and must be described as committed in a particular town, and that the state is confined in its proof to that town, and cannot prove an offence anywhere in the county, and that a more particular description of the house was not required. This decided the point; but the court went on to say that a conviction on the indictment would be a bar to any other prosecution for keeping a similar house in the same town during the time alleged. No reason is given for this, but it seems to indicate that the court thought that the keeping of a similar house in the same town during the time alleged would be but part and parcel of the offence for which conviction was had. If this is what the court meant, we do not agree with it, for the reasons we have given.

As there was but one count in the information in the case at bar, there could be a conviction of only one offence; and as the state's testimony tended to show several offences, it should have been put to elect for which it would go, and it was error to allow it to go for all as one offence.

The statute makes penal the keeping of "a house of ill fame, resorted to for the purpose of prostitution or lewdness." In some of the states similar statutes are construed to require proof that the house had an ill fame in order to convict. That construction has prevailed to some extent in this state at *nisi prius;* but we regard it as illogical and unsound. It amounts to saying that however bad the house is in point of fact, it is no offence under the statute to keep it if it has not an ill fame. This is keeping clean the outside of the house, while the inside is full of prostitution and lewdness. Certain ancient sects did like things, and a woe was pronounced upon them for it by the highest authority. The words "ill fame" are used in the statute to give name and character to the house, and do not refer to its reputation. Both at common law and in common parlance the words "house of ill fame" mean, a house resorted to for the purpose of prostitution; and hence to say of one that he keeps a house of ill fame without more, is to charge the exact offence punished by the statute, and is actionable *per se*, and an inuendo that an accusation of the crime of keeping a house of ill fame was thereby meant is sufficient, without using the remaining words of the statute. *Posnett* v. *Marble*, 62 Vt. 481. The gist of the offence is the keeping of the house, irrespective of its fame. The statute aims at the fact, not the fame; at the substance, not the shadow.

It follows, therefore, ill fame of the house not being an element of the offence, that it was not only unnecessary to prove it, but that evidence of it was irrelevant to any issue involved, for all the cases hold that the character of the

house cannot be shown by proof of its reputation; for that purpose the testimony is mere hearsay.

It is unnecessary to refer at length to the authorities on this question. We think the weight of judicial opinion sustains the view we take. A pretty full discussion of the subject will be found in *Henson* v. *State*, 62 Md. 231, 50 Am. Rep. 204, and note; and in *State* v. *Lee*, 80 Iowa 75, 20 Am. St. Rep. 401.

But it is said that if it was not necessary to prove ill fame, and evidence of it was irrelevant, the prisoner was not harmed by it, for that its only effect was to impose an unnecessary burden on the state, which helped rather than harmed the prisoner. Although irrelevancy alone is not cause for reversal, but the testimony must have been such that it might prejudice the excepting party on an issue involved—*Boutelle* v. *Fire Ins. Co.* 51 Vt. 4—and although, presumably, the court tried to confine this testimony to the question of reputation—yet it is so often true that reputation is, to the common mind at least, indicative that the fact is as reputed to be, that we cannot say the prisoner was not harmed by the testimony. Indeed, we think it more likely that she was harmed than that she was not. It certainly is not clear that she was not, as it must be in order to make the error non-reversible.

A woman, called as a witness by the state, testified to having seen a man on the bed with the prisoner in her house. On cross-examination, after having testified to the condition of the bed and that they were on it and dressed, she was asked what they were doing, and replied, "Ask them." She was again asked, and replied, "I am not obliged to tell." She was again asked, whereupon the court said it saw no occasion for pressing inquiry further in that direction, and prohibited it. Although cross-examination is a right, yet the court may control the exercise of it to any extent that does not infringe the right itself. This

control is often exercised, and never more properly than in prohibiting details that may be offensive, when intimation and suggestion will convey the meaning of the witness just as well. Whether in this case the meaning of the witness had been sufficiently conveyed and her credibility sufficiently tested when the cross-examination was stopped, is difficult to tell. Some of us think they had not been, and that the right of cross-examination was infringed; while others think we cannot say that, because the trial court saw the witness and noted the attendant circumstances, and so could judge better than we can when the examination had gone far enough to accomplish its legitimate ends.

There is no need of considering the other points of exception, as the questions raised are largely eliminated by the holding on the second point considered, and the remainder do not inhere in the case at all, and can scarcely again arise.

*Exceptions sustained, judgment reversed, verdict set aside, and cause remanded for a new trial.*