# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BESSIE WILSON V. COMMONWEALTH.

### March 16, 1922.

### Absent, West, J.

1. DISORDERLY HOUSES—*Evidence Sufficient to Show that House was one of Ill Fame—Case at Bar.*—In the instant case, a prosecution under Code of 1919, section 4548, the arrangement of the house and its furnishings, the large number of alleged guests whose names appeared on the register of accused, the method of keeping the register, together with accused's explanation of that method, the overtures which she and the other woman in the house made to four witnesses who tstified, her declarations and admissions to them as to her ability to procure more women if desired, and her assurances that there would be no danger of detection, made it perfectly plain that accused was then, and had been for some time prior thereto, plying her nefarious trade on a large scale.

   *Held:* That this evidence was sufficient to establish the fact that the house in question was a bawdyhouse or brothel.

2. DISORDERLY HOUSES—*Code of 1919, Section 4548—Whether Proof of General Reputation as to the Character of the House is Necessary to Sustain a Conviction.*—Code of 1919, section 4548, provides that: "If any person keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, he shall be confined in jail not exceeding one year and fined not exceeding two hundred dollars; and, in a prosecution for this offense, the general character of such house may be proved." Defendant contended that the Commonwealth must prove both that the house in question was in fact a bawdyhouse and that it had a general reputation as such.

   *Held:* That although some apparent support of this contention might be found in the fact that the statute, after using the expression "house of ill fame," also adds the words, "resorted to for purposes of prostitution or lewdness," yet this argument is repelled both by the language of the statute as a whole, and by the prevailing current of authority, and it is not necessary in a prosecution under the statute to prove that the house

had a general reputation as a bawdyhouse, where it is shown that it was in fact such a house.

3. WORDS AND PHRASES—*"General Character."*—The words "general character," as used in section 4548, Code of 1919, allowing the general character of the house to be shown in a prosecution for keeping a house of ill fame, were evidently used in the sense of "general reputation."

4. DISORDERLY HOUSES—*Proof that the House was in Fact of Bad Character.*—Before there can be a conviction for keeping a house of ill fame there must be proof that it was in fact a house of bad character; that is to say, a house actually resorted to for immoral purposes.

5. WORDS AND PHRASES—*"Bawdyhouse"*—*"House of Ill Fame."*— "Bawdyhouse" and "house of ill fame," as used in law, are convertible and synonymous terms.

6. DISORDERLY HOUSES—*Proof of General Reputation in Absence of Statute.*—Upon the charge of keeping a disorderly house, according to much respectable authority, no proof of general reputation of the house is admissible unless expressly made so by statute.

Error to a judgment of the Corporation Court of the city of Norfolk.

*Affirmed.*

The opinion states the case.

*James S. Barron,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The defendant, Bessie Wilson, was convicted in the police court of the city of Norfolk on a warrant charging her with keeping "a house of ill fame, resorted to for the purpose of prostitution and lewdness." On appeal to the corporation court, she was tried by a jury and again found guilty, and the sentence pronounced upon her by that court is before us for review.

The only ground upon which we are asked to interfere with the sentence is that the evidence did not warrant the verdict.

The statute upon which this prosecution rests is as follows: ·

"If any person keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, he shall be confined in jail not exceeding one year and fined not exceeding two hundred dollars; and, in a prosecution for this offense, the general character of such house may be proved." (Code 1887, sec. 3790; Code 1919, sec. 4548.)

The contention of the defendant is that to sustain a conviction under the foregoing statute the Commonwealth must prove two things—first, that the house in question was in fact a bawdyhouse or brothel; and, second, that it had a general reputation as such.

With respect to the first proposition embraced in this contention, we shall not go into the details of the evidence. The defendant introduced no testimony. The Commonwealth's evidence as to the actual character of the house consists of the testimony of four men, who appear to have visited the place at the instance of the police to investigate conditions and procure evidence. They did not, while there, personally witness or personally indulge in any unlawful acts, but they evidently allowed the defendant and another woman who was in the house at the time to suppose that they had come for immoral purposes. There were some unimportant and circumstantial conflicts in the testimony of these four men, but otherwise their credibility was not shaken or even questioned, except by the effect of such caution as should be used in giving credence to evidence obtained under representations which are not true. Their respective narratives are reasonable and consistent, and are in a measure corroborated by the entries in a book or register kept by the defendant and introduced at the trial.

Moreover, the question of the weight and credibility of their evidence was one for the jury to determine.

[1] Attaching to the evidence of the Commonwealth the weight which, under familiar rules, it must be accorded in this court, there is no room to doubt that the defendant was keeping a house resorted to for purposes of lewdness and prostitution. The arrangement of the house and its furnishings, the large number of alleged guests whose names appeared on her register, the method of keeping the register, together with her explanation of that method, the overtures which she and the other woman in the house made to the four men who testified, her declarations and admissions to them as to her ability to procure more women if desired, and her assurances that there would be no danger of detection, made it perfectly plain that she was then, and had been for some time prior thereto, plying her nefarious trade on a large scale.

[2, 5] The second proposition—namely, that it was incumbent upon the Commonwealth to prove that the general reputation of the place was that of a bawdyhouse—appears to be the one mainly relied upon by the defendant, but, in our opinion, is without merit.

It is, of course, in a sense true that a house of ill fame is a house with a bad name, but the offense aimed at by the statute is the keeping of such a house, and not the establishment of its bad reputation.

Some apparent support for the defendant's contention that there must be proof of both the character and the reputation of the house may be found in the fact that the statute, after using the expression "house of ill fame," also adds the words "resorted to for purposes of prostitution or lewdness." It seems plausible to argue that it was not necessary to use both of these expressions if the fame of the house was not a material part of the offense. This argument, however, is satisfactorily repelled both by the

language of the statute as a whole, and by the prevailing current of authority. The concluding sentence of the statute expressly provides that "in a prosecution for this offense, the general character of such house may be proved." The words "general character" are evidently used here in the sense of "general reputation," because it is universally held that before there can be a conviction for keeping a house of ill fame there must be proof that it was in fact a house of bad character; that is to say, a house actually restored to for immoral purposes. The language of the statute, quoted last above, was manifestly intended to make it clear that the general reputation of the house could be used as evidence tending to show that it was in fact a bad house. This being true, it necessarily follows that the gist of the offense aimed at was the keeping of such a house, and not its reputation. The right to prove its reputation as tending to establish the offense was inserted for the express purpose of allowing the Commonwealth to use evidence which otherwise might be excluded as immaterial and irrelevant, on the ground that the fame of the place is no part of the offense. This is illustrated by the case of *State* v. *Plant, infra,* wherein it was held that proof of general reputation was irrelevant and improper.

There is no Virginia case in point, and the decisions elsewhere are not entirely in accord upon the question under consideration. This may be, and doubtless is, in some measure due to varying provisions of the several statutes on the subject. We are satisfied, however, that when proper effect is given to the language of the Virginia statute, the decided weight of both authority and reason supports the view we have adopted.

It seems clear that if our statute had used the term "bawdyhouse" instead of "house of ill fame," there would be no room whatever to contend that the fame or reputation of the house must be proved in order to sustain the

conviction. If this proposition be conceded, as we think it must be, it follows that there is no force at all in the defendant's position. "Bawdyhouse" and "house of ill fame," as used in law, are convertible and synonymous terms. 1 Bouv. Law Dict. 193; Webster's New International Dict. 194; Rapalje & Lawrence Law Dict. 119, 618; *State* v. *Lee,* 80 Iowa 75, 45 N. W. 545, 20 Am. St. Rep. 401, 405; *Henson* v. *State,* 62 Md. 231, 50 Am. St. Rep. 204; *State* v. *Smith,* 29 Minn. 193, 12 N. W. 524; *State* v. *Boardman,* 64 Me. 523; *Cotton* v. *City of Atlanta,* 10 Ga. App. 397, 73 S. E. 683, 684.

In *State* v. *Lee, supra,* the court was dealing with a statute similar to ours. The act prohibited was the keeping of "a house of ill fame, resorted to for the purposes of lewdness and prostitution" (Code 1873 §4013), and the statute permitted proof of the general reputation of the place "for the purpose of establishing the character of the house." (Laws 1884, c. 142, §4.) Referring to the provision, the court said: "In our opinion, this section was not designed to enlarge the ingredients of the crime by requiring that the house should be generally reputed to be a house of ill fame, but to enlarge the means of proving its true character." And the court specifically held that a conviction under the Iowa statute did not require proof that the house was in fact one of bad repute.

In *State* v. *Smith, supra,* the court said: "The term 'house of ill fame' is, no doubt, a mere synonym for 'bawdyhouse,' having no reference to the fame of the place kept, but denoting the fact. The gist of the offense is the keeping of the house for purposes of prostitution and lewdness, and not its reputation."

In 18 Corpus Juris, pages 1241-2, section 24 (e), it is said: "Ordinarily it is not necessary that a house or place have the reputation of being a bawdyhouse or house of ill fame to make it such a house. But some statutes pro-

hibiting the keeping of a house of ill fame have been construed as requiring the house to have the reputation of a house of ill fame. Where the statute merely declares that evidence of the reputation of the house is admissible, it does not thereby make its reputation an element of the offense of keeping such a house."

In *State* v. *Plant,* 67 Vt. 454, 458, 32 Atl. 237, 48 Am. St. Rep. 821, 823-4, the statute involved appears to have been exactly like ours, except that it did not provide for proof of the general reputation of the house. In that case the court said: "The statute makes penal the keeping of a 'house of ill fame, resorted to for the purpose of prostitution or lewdness.' In some of the States, similar statutes are construed to require proof that the house had an ill fame in order to convict. That construction has prevailed to some extent in this State at *nisi prius,* but we regard it as illogical and unsound. It amounts to saying that, however bad the house is in point of fact, it is no offense under the statute to keep it if it has not an ill fame. * * * The words 'ill fame' are used in the statute to give name and character to the house, and do not refer to its reputation. Both at common law and in common parlance, the words 'house of ill fame' mean a house resorted to for the purpose of prostitution. * * * The gist of the offense is the keeping of the house, irrespective of its fame. The statute aims at the fact, not the fame; at the substance, not the shadow.

"It follows, therefore, ill fame of the house not being an element of the offense, that it was not only unnecessary to prove it, but that evidence of it was irrelevant to any issue involved, for all the cases hold that the character of the house cannot be shown by proof of its reputation; for that purpose, the testimony is mere hearsay.

"It is unnecessary to refer at length to the authorities on this question. We think the weight of judicial opinion sustains the view we take. A pretty full discussion of the

subject will be found in *Henson* v. *State,* 62 Md. 231, 50 Am. Rep. 204, and note, and in *State* v. *Lee,* 80 Iowa, 75, 20 Am. St. Rep. 401.   *   *   *"

See also *State* v. *Foley,* 45 N. H. 466; *Toney* v. *State,* 60 Ala. 97; *State* v. *Brunell,* 29 Wis. 435.

The cases of *Caldwell* v. *State,* 17 Conn. 467, 472; *State* v. *Blakesley,* 38 Conn. 523, 524; *People* v. *Castro,* 75 Mich. 127, 42 N. W. 938; *People* v. *Pinkerton,* 79 Mich. 110, 44 N. W. 180; *Drake* v. *State,* 14 Neb. 535, 17 N. W. 117, and *King* v. *State,* 17 Fla. 183, 191, cited and relied on by the defendant, support the general proposition that there must be proof of the bad name of the place to sustain a conviction upon the charge of keeping a house of ill fame. These cases are out of line with the current of authority, and, moreover, would undoubtedly have been decided differently if the statutes in Connecticut, Michigan, Nebraska and Florida had provided, as ours does, for the proof of general reputation for the purpose of establishing the charge.

[6] Indeed, according to much respectable authority, no proof of general reputation of the house is admissible at all on such a charge unless expressly made so by statute. *State* v. *Plant, supra;* 9 Am. & Eng. Enc. (2nd Ed.), p. 532, and cases cited in note 1.

We find no error in the judgment complained of, and it must be affirmed.

*Affirmed.*