# Richmond

ADRIENNE MARIE GASKILL v. COMMONWEALTH OF VIRGINIA.

October 11, 1965.

Record No. 6040.

Present, All the Justices.

*John H. Kennett, Jr.,* for the plaintiff in error.

*W. P. Bagwell, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

I'ANSON, J., delivered the opinion of the court.

Adrienne Marie Gaskill, also known as Adrienne M. Roenstad, defendant, was convicted in the Municipal Court of the City of Lynchburg, Virginia, on a warrant charging her with operating a bawdy house, in violation of § 18.1-196, Code of 1950, as amended. On appeal to the corporation court of said city, the case was tried *de novo* by a jury, and again she was found guilty and her punishment fixed at twelve months in jail. Judgment was entered on the verdict, and defendant is here on a writ of error.

Defendant contends that (1) the evidence was insufficient to support the conviction; and (2) the judgment of conviction is void because at her initial trial in the municipal court she was not afforded a jury trial, which violated her rights under art. I, § 8, of the Constitution of Virginia, art. 3, § 2, clause 3, of the Constitution of the United States, and the Sixth Amendment and the due process clause of the Fourteenth Amendment.

The evidence shows that the defendant has operated a bawdy house at 906 Fourth street, in the city of Lynchburg, Virginia, intermittently since 1936. Her infamy as a "madam" appears in the records of this Court under the style of *Gaskill v. Commonwealth,* 185 Va. 440, 39 S. E. 2d 296 (1946).

On the night of December 19, 1963, two special police officers, who had been hired by the Lynchburg police department for the purpose of obtaining evidence of defendant's illegal operations, attempted to gain entrance to defendant's home and were told by someone inside the house to "go away. We don't have any girls tonight." The officers returned to defendant's home the next day, December 20, and, after two unsuccessful attempts to gain admission, were finally admitted on their third visit around 9 P. M. that night.

The officers posed as insurance adjusters and told defendant that they wanted a "date." She examined their credentials, and while she was not entirely satisfied with the identification of one of the men, decided "to take a chance on him." She then introduced the officers to two girls and told the officers that if they had any friends coming for Christmas to tell them they had "a nice time." The

girls, Toni Miller and Faye Thompson, retired with the officers to separate bedrooms while the defendant entertained an earlier male caller in the living room.

After the girls and the officers entered the bedrooms and had some discussion as to price, etc., the two girls collected their fees, removed practically all of their clothing, and urged the officers to undress. Thereupon the officers told the girls that they were police officers and placed them under arrest.

The cab driver who transported the officers to defendant's home the night they were admitted testified that he had carried passengers to defendant's address over a period of several years and knew they were going there for the purpose of having sexual relations with the inmates of the house. He subsequently pleaded guilty to a charge of knowingly transporting the officers to a known house of prostitution.

Defendant admitted that she had operated the house of prostitution for a number of years and that the two girls found in the home the night of arrest were prostitutes. She said, however, that she had ceased operating the house on December 11, 1962, when she was convicted on a charge of income tax evasion and placed on probation; that the girls were mere visitors in her home on the night of the arrest; and that they were not there for immoral purposes. She further said that one of the girls was not physically able to ply her trade on the night of the arrest, but the evidence of a physician called by the defendant as a witness in her behalf does not support the statement. Neither girl was called as a witness by the defendant.

Defendant's contention that the evidence was not sufficient to support the conviction is without merit. The question presented was one of fact for the jury and, without further comment on the evidence, suffice it to say that it was overwhelming in support of the jury's finding that the defendant was operating a bawdy house, where persons could meet for the purpose of prostitution or unlawful sexual intercourse, on the night of her arrest. See *Foster* v. *Commonwealth*, 179 Va. 96, 18 S. E. 2d 314; *Wilson* v. *Commonwealth*, 132 Va. 824, 826, 827, 111 S. E. 96, 97.

Defendant says that the offense of keeping a bawdy house was not one of the minor offenses at common law which was triable without a jury, since it was an offense indictable as a nuisance, and the right of trial by jury is the right as it existed at the time the Constitution was adopted. Thus she argues that the judgment of conviction

is void because the final judgment in the municipal court was rendered without a jury trial. *Miller* v. *Commonwealth*, 88 Va. 618, 14 S. E. 161, 342, 979, 15 L. R. A. 441 (1892), is relied upon in support of the argument.

It is true that in the *Miller* case, *supra*, this Court held that § 4106, Code of 1887, which conferred upon police justices and justices of the peace jurisdiction over the offense of keeping a bawdy house, concurrent with that of the county and corporation courts, was repugnant to art. 1, § 10, of the Virginia Constitution of 1869, guaranteeing to an accused in criminal prosecutions the right to demand a speedy trial by an impartial jury; and that even though §§ 4107 and 4108, Code of 1887, gave in such a case an appeal of right and a right to trial by jury in the appellate court, these sections did not relieve the statute of its repugnancy.

In *Brown* v. *Epps*, 91 Va. 726, 21 S.E. 119, 27 L. R. A. 676 (1895), this Court had before it a petition for a writ of habeas corpus in which the petitioner contended that Code § 4106, as amended by Acts of Assembly, 1893-1894, ch. 369, pp. 430, 431, to cure the defect in the statute which this Court held to exist in the *Miller* case, was null and void as repugnant to art. I, § 10, of the Constitution of Virginia. President Keith, speaking for the Court, rejected the petitioner's contention, and in discussing the validity of the statute before its amendment pointed out that cases involving the jurisdiction of police justices and justices of the peace under the statute had been frequently before this Court and in each instance, save in the *Miller* case, the validity of the judgment based on the statute had been upheld. He also said that he would have had no difficulty in the *Miller* case in declaring § 4106 of the Code of 1887 constitutional, since Code §§ 4107 and 4108 provided a simple procedure for an appeal of right and a right to a jury trial in a higher court. Thus, in effect, the holding in *Miller* was overruled. See *Bowen* v. *Commonwealth*, 132 Va. 598, 601, 111 S. E. 131, 132; *Ragsdale* v. *Danville*, 116 Va. 484, 487, 488, 82 S. E. 77, 78.

At the time of the Revolution, justices of the peace of the several colonies exercised summary jurisdiction over more than two hundred petty offenses, including *qui tam* proceedings then prevalent in the colonies. They continued to exercise jurisdiction over such offenses after the adoption of Constitutions by the several states and commonwealths and after the adoption of the Federal Constitution. See article by Professor Felix Frankfurter, later a Justice of the Supreme Court of

the United States, and Thomas G. Corcoran, titled, "Petty Federal Offenses and the Constitutional Guarantee of Trial by Jury," in 39 Harvard Law Review, pp. 917, 962-965.

However, we need not here consider whether the keeping of a bawdy house was included in the several hundred petit offenses at common law which did not require a jury trial at the time the Constitution was adopted, for it has been generally held that the constitutional right to a jury trial in criminal cases is secured, although such a trial is not authorized in the first instance, provided there is a right of appeal, without any unreasonable restrictions, to a court in which a jury trial may be had. *Brown* v. *Epps, supra; Cruikshank* v. *Duffield,* 138 W. Va. 726, 77 S. E. 2d 600, 602; *Commonwealth* v. *Leach,* 246 Mass. 464, 141 N. E. 301, 304, 305; *Bellingham* v. *Hite,* 37 Wash. 2d 652, 255 P. 2d 895, 898; *Hill* v. *State,* 174 Ark. 886, 298 S. W. 321, 322; *Alford* v. *State,* 170 Ala. 178, 54 So. 213, 225-228; *In re Kinsel,* 64 Kan. 1, 67 P. 634: 50 C. J. S., Juries, § 132(c), p. 861; 31 Am. Jur., Jury, § 18, pp. 24, 25; 11 Mich. Jur., Jury, § 11, p. 473.

Moreover, article I, § 8, of our present Constitution of 1902, as amended, Acts 1928, p. 253, provides that "Laws may be enacted providing for the trial of offenses not felonious by a justice of the peace or other inferior tribunal without a jury, preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction."

Section 16.1-132, Code of 1950, as amended, enacted pursuant to § 8 of the Constitution, grants to any person convicted in a court not of record of an offense not felonious an appeal of right to the appropriate circuit, corporation or hustings court.

Under Code § 16.1-136 an appeal taken in accordance with § 16.1-132 shall be heard *de novo* in the appellate court without formal pleadings, and the accused shall be entitled to trial by jury in the same manner as if he had been indicted for the offense in the circuit or corporation court. Such an appeal is in effect a statutory grant of a new trial to the accused, to be had before a court of record having original criminal jurisdiction. It annuls the judgment of the inferior tribunal as completely as if there had been no previous trial. It not only annuls the judgment of the inferior court, but it is reversible error to permit such judgment to be introduced in evidence before the jury on a trial of the case on appeal. *Gravely* v. *Deeds,* 185 Va. 662,

664, 665, 40 S. E. 2d 175, 176; *Baylor* v. *Commonwealth*, 190 Va. 116, 119, 120, 56 S. E. 2d 77, 78, 79.

In the present case, the defendant was not denied a jury trial. Indeed, she was tried by a jury. The statute allowing her an appeal of right contained no unreasonable restrictions. When defendant noted an appeal, the judgment of the municipal court was annulled, and her trial before a jury in the corporation court was in the same manner as if she had been originally indicted for the offense in that court. Thus defendant was not deprived of her right to a jury trial under the provisions of the Constitution of Virginia at the time it was first adopted, or the present Constitution of 1902, and the statutes enacted pursuant thereto, and there is no merit in her contention.

■ Defendant next argues that art. 3, § 2, clause 3, of the Constitution of the United States, the Sixth Amendment and the due process clause of the Fourteenth Amendment obligate the states to secure a trial by jury in all criminal prosecutions.

Defendant concedes, however, that art. 3, § 2, clause 3, and the Sixth Amendment of the Constitution of the United States, apply only to the right of trial by jury in a criminal prosecution in the federal courts; that the language of the due process clause of the Fourteenth Amendment of the Constitution of the United States does not expressly guarantee the right of trial by jury in state courts; and that a state has full power over procedures in its own courts. But she argues that the right to trial by jury is a fundamental right under the Federal Constitution, and since a scheme of "ordered liberty" is guaranteed by the due process clause of the Fourteenth Amendment, the first eight amendments of the Constitution of the United States are made applicable to the states through the due process clause, and a jury trial was required in her initial trial in the municipal court.

A complete answer to this argument is found in *Palko* v. *Connecticut*, 302 U. S. 319, 58 S. Ct. 149, 82 L. ed. 288; *Adamson* v. *California*, 332 U. S. 46, 67, 68, 67 S. Ct. 1672, 91 L. ed. 1903, 171 A. L. R. 1223; 31 Am. Jur., Jury, §§ 8, 9 and 10, pp. 14-17.

In *Palko*, *supra*, Mr. Justice Cardozo, speaking for the Court, said:

" * * * The right to trial by jury and the immunity from prosecution except as the result of an indictment may have value and importance. Even so, they are not of the very essence of *a scheme of ordered liberty*. * * * Few would be so narrow or provincial as to

maintain that a fair and enlightened system of justice would be impossible without them." *302 U. S. at p. 325.* (Emphasis added.)

The following excerpts from American Jurisprudence are supported by numerous cases:

"The right to a jury trial as it exists in state courts, however, is not a fundamental right guaranteed by the Federal Constitution; its provisions, which guarantee the right of jury trial, do not limit the power of the states to abolish, modify, or alter the right of trial by jury." 31 Am. Jur., Jury, § 8, p. 14.

"By the great weight of authority, a requirement of due process in a constitutional provision does not require a trial by jury. This is true of the due process clause of the Fourteenth Amendment, which does not require a jury trial in judicial proceedings in the state court. Indeed, there is nothing in the Fourteenth Amendment to the federal Constitution that requires a jury trial. A trial by jury in suits at common law pending in the state courts is not a privilege or immunity of national citizenship which the states are forbidden by that amendment to abridge. Thus, the requirements of the Fourteenth Amendment are met if a trial in a state court is according to the settled course of judicial proceedings therein. * * *" 31 Am. Jur., Jury § 10, pp. 16, 17.

It is undeniably true that certain rights secured under the first eight amendments to the Federal Constitution have been held "to be implicit in the concept of ordered liberty" and hence binding on the states through the due process clause of the Fourteenth Amendment. But certainly the right of a trial by jury has never been deemed a *sine qua non* to the rendition of justice in all criminal cases—if so, not even the most petty offenses would be triable without a jury.

For the reasons stated, the judgment of the court below is

*Affirmed.*