COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Agee and Kelsey
Argued at Salem, Virginia


TERRY McCLELLAN
                                              OPINION BY
v.   Record No. 3445-01-3      JUDGE ROBERT J. HUMPHREYS
                                           FEBRUARY 25, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF NELSON COUNTY
                      J. Michael Gamble, Judge

          Norman Hunter Lamson for appellant.

          Richard B. Smith, Senior Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Terry McClellan appeals her conviction, after a bench trial,

for operating a food manufacturing plant without inspection, in

violation of Code § 3.1-398.1, and offering misbranded food for

sale, in violation of Code § 3.1-388(a). McClellan contends the

trial court erred in 1) finding the evidence sufficient to

establish that she operated a "food manufacturing plant," within

the meaning of the statute; 2) admitting expert testimony which

amounted to "irrelevant and improper opinion"; 3) finding that her

conviction for offering misbranded food for sale did not

constitute double jeopardy; and 4) finding the evidence sufficient

to establish that she sold the food items in "package form" as

required pursuant to Code § 3.1-396(e).  For the reasons that follow, we affirm the judgment of the trial court.

## I.  Background

McClellan was tried in district court on September 12, 2001, on charges of 1) offering adulterated food for sale, in violation of Code § 3.1-388(a); 2) offering misbranded food for sale, in violation of Code § 3.1-388(a); 3) refusing entry for inspection, in violation of Code § 3.1-388(e); and 4) operating a food manufacturing plant without inspection, in violation of Code § 3.1-398.1.  The charges related, in relevant part, to McClellan's production and sale of goats' cheese products from her farm.  She was found not guilty of the adulterated food charge, but convicted of the other three charges.  McClellan subsequently appealed her convictions to the circuit court.

On October 2, 2001, just prior to the trial de novo in circuit court, McClellan's new counsel filed a motion to dismiss, in part in the form of a plea of autre fois acquit, contending that her acquittal on the adulterated food charge barred her conviction, and any further prosecution, for offering the same cheese as a misbranded food.  Specifically, McClellan contended that Code § 3.1-388(a) created a single offense "committable by different means" and that because she had been acquitted of the adulterated food charge, further prosecution for the misbranded food charge would amount to an improper successive prosecution for the same offense.  After a hearing on the issue, the trial court

-

denied the motion, finding that selling adulterated food was a separate offense from selling misbranded food and that the prosecutions for the two separate charges were simultaneous not successive. During the trial de novo in the circuit court, Donald W. Butts, Director of Consumer Protection for the Virginia Department of Agriculture, testified after being qualified as a food safety expert. Butts testified as to the number of employees in his division and generally described the mission of the division. He further testified that the potential for producing hazardous food "would be the same in terms of the results that would occur," whether the food was produced in a home or in a factory and that goats' cheese is a potentially hazardous food product. Butts stated "the place where [the cheese] is processed should be inspected," "to protect the public from food [borne] disease, or even a food [borne] death." McClellan objected to Butts' testimony in this regard contending it was irrelevant and that his statements concerning the potential for contamination or hazard were "opinion." The trial court overruled each of her objections.

At the close of the Commonwealth's evidence, McClellan raised a motion to strike, renewing her motion to dismiss on the grounds of double jeopardy and contending 1) that the Commonwealth had failed to prove the misbranded charge because no evidence established the cheese was sold in "package form" as required by Code § 3.1-388(a); 2) that the Commonwealth had failed to

-

establish McClellan's refusal to allow inspectors to enter her home violated Code § 3.1-388(e); and 3) that the Commonwealth had failed to establish that her home/farm was a "food manufacturing plant, food storage warehouse, or retail food store" as contemplated in Code § 3.1-398.1.

The court granted McClellan's motion with regard to the refusal to permit entry for inspection charge,[1] but overruled the motion as to the remaining two charges. In closing argument, McClellan contended that the Commonwealth had failed to establish her home was a "food manufacturing plant," that she had "operated" within the meaning of the statute, and that she had offered the cheese for distribution in packaged form. The trial court found McClellan guilty of both remaining charges.

## II.  Analysis

### A.

On appeal, McClellan first contends that the trial court erred in finding the evidence sufficient to establish that she operated a "food manufacturing plant," within the meaning of Code § 3.1-398.1.  We disagree.[2]

_____

[1] The trial court noted that it did not grant the motion based upon the Fourth Amendment, but solely upon McClellan's decision to stop selling the products in conjunction with her refusal to permit the inspectors to inspect her home.

[2] The Commonwealth contends that McClellan failed to properly preserve her argument in this regard.  However, our review of the record demonstrates that McClellan presented the specific issue to the trial court in the form of motions to strike, both at the close of the Commonwealth's case-in-chief

-

Code § 3.1-398.1 provides as follows:

> No person shall operate a <u>food manufacturing plant, food storage warehouse, or retail food store</u> until it has been inspected by the Commissioner.  This section shall not apply to food manufacturing plants operating under a grant of inspection from the Bureau of Meat and Poultry Inspection or a permit from the Bureau of Dairy Services of the Virginia Department of Agriculture and Consumer Services and Grade A fluid milk manufacturing plants and shellfish and crustacea processing plants operating under a permit from the Virginia Department of Health.

(Emphasis added).  The Commonwealth does not contend that McClellan operated a "food storage warehouse" or a "retail food store."  Instead the sole issue pertaining to this statute is whether McClellan operated a "food manufacturing plant," within the meaning of the statute.

McClellan concedes that her cheese products fall within the definition of "food" as provided in the Virginia Food Act, which includes Code § 3.1-398.1.[3]  However, the Act does not define "food manufacturing plant."

---

and at the close of the evidence, and that the trial court had an opportunity to fully consider the issue and make a ruling.  See <u>Neal v. Commonwealth</u>, 15 Va. App. 416, 422, 425 S.E.2d 521, 525 (1992) ("This Court has said the primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.").

[3] Code § 3.1-387(3) defines the term "food" as "(1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article."

Thus, in considering this issue, we first recognize that

> [i]t is one of the fundamental rules of
> construction of statutes that the intention
> of the legislature is to be gathered from a
> view of the whole and every part of the
> statute taken and compared together, giving
> to every word and every part of the statute,
> if possible, its due effect and meaning, and
> to the words used their ordinary and popular
> meaning, unless it plainly appears that they
> were used in some other sense.  If the
> intention of the legislature can be thus
> discovered, it is not permissible to add to
> or subtract from the words used in the
> statute.

Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771

(1918).  Indeed,

> [i]n the construction of statutes, the
> courts have but one object, to which all
> rules of construction are subservient, and
> that is to ascertain the will of the
> legislature, the true intent and meaning of
> the statute, which are to be gathered by
> giving to all the words used their plain
> meaning, and construing all statutes in pari
> materia in such manner as to reconcile, if
> possible, any discordant feature which may
> exist, and make the body of the laws
> harmonious and just in their operation.

Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914).

Nevertheless, "[i]t is [also] a cardinal principle of law that

penal statutes are to be construed strictly against the State

and in favor of the liberty of a person.  Such a statute cannot

be extended by implication, or be made to include cases which

are not within the letter and spirit of the statute."  Wade v.

Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960).

-

The Supreme Court of Virginia has recognized the general accepted meaning of the term "manufacture" as follows:

> "Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary . . . [.] There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.'"

Solite Corp. v. King George Co., 220 Va. 661, 663, 261 S.E.2d 535, 536 (1980) (quoting Prentice v. City of Richmond, 197 Va. 724, 731, 90 S.E.2d 839, 843 (1956) (quoting Anheuser-Busch Brewing Association v. United States, 207 U.S. 556, 562 (1908))). Thus, the definition of manufacturing requires "transformation of a raw material into an article of substantially different character." Commonwealth v. Orange-Madison Coop., 220 Va. 655, 658, 261 S.E.2d 532, 534 (1980). McClellan concedes that her cheese making falls within this definition of "manufacture," but contends that she manufactured the cheese on her family farm, which does not constitute a "plant." However, Webster's Third New International Dictionary defines the term "plant," as "the land, buildings, machinery, apparatus and fixtures employed in carrying on a trade or a mechanical or other industrial business" and/or "a factory or workshop for the manufacture of a particular product." Webster's Third New International Dictionary 1731 (1993). Offering further guidance, the Virginia

-

Board of Agriculture and Consumer Services, the agency charged with the task of enforcing the Virginia Food Act, has adopted by reference the provisions of Chapter 1 of Title 21, Part 110 of the Code of Federal Regulations. See Code §§ 3.1-361 and -398; 2 VAC 5-600-10(B). These regulations govern the administration and enforcement of federal food and drug laws, and provide the following definition for the term "plant":

> Plant means the building or facility or parts thereof, used for or in connection with the manufacturing, packaging, labeling, or holding of human food.

21 CFR § 110.3(k).

In light of these broad definitions, we find that the "ordinary" use of the term "plant" encompasses any building or dwelling where such "manufacturing, packaging, labeling, or holding of human food" takes place. Accordingly, McClellan's "operation" met the definition of a "food manufacturing plant" within the clear context of the statute. Indeed, the Supreme Court of Virginia has long recognized that it is "'inherent in the plenary power [of] the state[,] which enables it to prohibit all things hurtful to the comfort, safety, and welfare of society,'" to regulate the food and drink industry. Commonwealth v. Stratford Packing Co., 200 Va. 11, 16, 104 S.E.2d 32, 36 (1958). Thus, the General Assembly has charged the Commissioner and the Board of Agriculture with the duty to "inquire carefully into the dairy and food and drink products . . . which are manufactured or

-

sold, or exposed, or offered for sale in this Commonwealth." Code § 3.1-402.

McClellan offered the cheese that she manufactured for sale in the Commonwealth. It is clear that the General Assembly intended the Virginia food and drink laws, enforced by the Commissioner and the Board of Agriculture, to apply to operations like McClellan's, regardless of where she manufactured the cheese and offered it for sale.

## B.

McClellan next contends that the trial court erred in admitting the expert testimony of Butts, which she contends amounted to "irrelevant and improper opinion." Specifically, McClellan argues that Butts' testimony as to the number of employees in the Department and the potential health hazards associated with the production of goats' cheese was of no relevance to this matter. She further contends that Butts' testimony that a residence/farm where such a food product is manufactured should be inspected due to the potential health hazard, was improper opinion evidence and that Butts' testimony was offered merely for the purposes of inducing fear on the part of the trial court.[4]

---

[4] We do not address McClellan's contention that Butts' testimony was offered merely to induce "fear" on the part of the trial court as McClellan raised no such argument below. See Rule 5A:18; see also West Alex. Prop. v. First Va. Mort., 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an

-

However, the Supreme Court of Virginia has held that

> "[a]n expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation . . . give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when [the witness's] knowledge of the matter in relation to which [the witness's] opinion is asked is such, or is so great, that it will probably aid the trier [of fact] in the search for the truth."

Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002) (quoting Neblett v. Hunter, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966)). Further, "[t]he admissibility of expert evidence is largely a matter in the discretion of the trial court, and its ruling allowing a witness to so testify will not be reversed unless it clearly appears that [the expert] was not qualified." C. & O. Ry. Co. v. Meyer, 150 Va. 656, 671, 143 S.E. 478, 483 (1928).

Here, Butts was qualified as a food safety expert, but also testified as an employee of the Department of Agriculture. His testimony tended to support the Commonwealth's contention that McClellan's operation fell within the parameters of the Virginia Food Act and that the agency properly attempted to inspect it. See Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127

---

appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court.").

-

(1996) ("Evidence is relevant if it has any logical tendency to prove an issue in a case.").  Accordingly, we find no abuse of discretion in permitting his testimony pertaining to the inspection process and the need to inspect certain facilities pursuant to the statutory scheme.

C.

McClellan also claims that the trial court erred in finding that her conviction for offering misbranded food for sale did not constitute double jeopardy.  We again disagree.

Code § 3.1-388(a) prohibits "[t]he manufacture, sale, or delivery, holding or offering for sale of any food that is adulterated or misbranded."  McClellan contends that this provision proscribes but one offense, which can be committed by one of several means.  Thus, pleading autre fois acquit and pursuant to Code § 19.2-292, McClellan argues that because she was acquitted by the district court of the charge of offering adulterated food, further prosecution for the offense of misbranding in circuit court amounted to a successive prosecution, violating principles of double jeopardy.

The common-law plea of autre fois acquit prevented the re-trial of a person who had previously been acquitted for the same offense.  United States v. Scott, 437 U.S. 82, 87 (1978).  Code § 19.2-292 likewise provides that:

> [a] person acquitted upon the facts and
> merits on a former trial, may plead such
> acquittal in bar of a second prosecution for

-

> the same offense, notwithstanding any defect
> in the form or substance of the indictment
> or accusation on which he was acquitted,
> unless the case be for a violation of the
> law relating to the state revenue and the
> acquittal be reversed on a writ of error on
> behalf of the Commonwealth.

Code § 19.2-292.

> Generally, to determine whether charges are
> for the "same offense," courts turn to the
> test established in Blockburger [v. United
> States, 284 U.S. 299, 304 (1932)]. For
> example, the Supreme Court noted:
>
> "In Brown v. Ohio, [432 U.S. 161 (1977)], we
> stated the principal test for determining
> whether two offenses are the same for
> purposes of barring successive prosecutions.
> Quoting from Blockburger . . ., which in
> turn relied on Gavieres v. United States,
> [220 U.S. 338, 342-43 (1911)], we held that
> '"[t]he applicable rule is that where the
> same act or transaction constitutes a
> violation of two distinct statutory
> provisions, the test to be applied to
> determine whether there are two offenses or
> only one, is whether each provision requires
> proof of a fact which the other does not."'"
> 432 U.S., at 166.

Dalo v. Commonwealth, 37 Va. App. 156, 162, 554 S.E.2d 705, 708

(2001) (quoting Illinois v. Vitale, 447 U.S. 410, 416 (1980)).

However, we need not reach the issue of whether the charges

constitute the "same offense" under the Blockburger analysis

because the charges at issue were brought as a part of a single

prosecution. In fact, it is well settled that an appeal de novo

from a general district court to a circuit court annuls the former

judgment as completely as if no trial had ever occurred. Gaskill

v. Commonwealth, 206 Va. 486, 489, 144 S.E.2d 293, 296 (1965).

-

Thus, McClellan's argument that her voluntary appeal, after her conviction for the misbranding charge in district court, constituted a new trial is without merit, and we find that the trial court committed no error in determining that McClellan's prosecution and conviction for the charge did not violate her rights against double jeopardy.

## D.

Finally, McClellan argues that the trial court erred in finding the evidence sufficient to establish that she sold the food items in "package form" as required pursuant to Code § 3.1-396(e). We again disagree.

Code § 3.1-396, provides as follows, in pertinent part:

> A food shall be deemed to be misbranded:
>
> *     *     *     *     *     *     *
>
> (e) If in package form, unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; (2) the name of the article; (3) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count; provided, that under clause (3) of this subdivision reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Board.

The plain and ordinary meaning of the term "package" is that of "a commodity in its container; a unit of product uniformly processed, wrapped or sealed for distribution." Webster's, supra, at 1617. The photographs admitted into evidence here,

-

showed that each of the cheeses were provided to the purchaser in zip-lock bags with writing on them. This certainly provided credible evidence upon which the trial court could reasonably find that each product was uniformly placed in some sort of "wrapping" or "seal" for distribution and, thus, we find no error in the trial court's determination that the cheeses were offered in "package form."

Nevertheless, McClellan contends that she merely placed the cheeses in the bags for the purchaser's convenience and that because her cheeses were sold by the pound, they were not pre-packaged for distribution purposes. However, no evidence was presented to this effect at trial. Accordingly, we do not consider such evidence or argument for purposes of this appeal. See Rule 5A:18. For the above-stated reasons, we find no error in the trial court's rulings and affirm its judgment.

Affirmed.