# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## J. D. ROLLER v. THE COMMONWEALTH.

January 11, 1934.

Present, Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Warren & Cantwell, Charles H. Funk* and *H. E. Widener,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

J. D. Roller, a resident of Bristol, Virginia, was indicted jointly with R. L. Nichols and W. R. Roe in Smyth county for robbery from the person of Mrs. E. G. McCue of four diamond rings aggregating in value of approximately $850.00. He was found guilty by the jury, who fixed his punishment at eight years in the penitentiary. Upon this verdict judgment was entered by the court, to which a writ of error was awarded.

The accused assigns three grounds of error. The first assignment of error is to the refusal of the trial court to

set aside the verdict because of insufficient evidence to sustain it.

We do not believe it necessary or profitable to go into a lengthy discussion of the evidence in this particular, but will briefly outline the facts disclosed by the record.

J. D. Roller, the accused, was secretary and manager of the Holston Small Loan Company at Bristol, Virginia, and had been connected with that company for some years prior to the time of the alleged robbery. One Mrs. E. G. McCue operated several beauty parlors in Bristol, and sold or attempted to sell diamonds on consignment from a man by the name of Palonsky, who handled diamonds for a firm located in Asheville, North Carolina. It appears that Roller and Mrs. McCue became acquainted some three or four months prior to September 20, 1932, and that on that date or the early morning following, arrangements were made between them whereby they were to make a trip by automobile to Galax, Virginia, to solicit sales for diamonds to be furnished by Mrs. McCue. The two left Bristol about nine o'clock on the morning of September 21, 1932, for Galax in the car of Roller and arrived at Galax between 12 and 1 o'clock on that day. There they immediately went to a restaurant operated by one Xenos and had lunch. While at the restaurant an effort was made to interest Xenos, who was known to Roller, in the purchase of the diamonds, but he declined and upon the inquiry of Roller as to prospective purchasers of these diamonds, Xenos suggested that a Mr. Felts might be a prospective buyer. It was suggested by Roller that he (Xenos) keep the diamonds and advertise through the local paper and in that way secure a purchaser or purchasers for them, but this Xenos likewise declined to do. Then Roller and Mrs. McCue proceeded to locate Mr. Felts and interest him in the purchase of the diamonds, but they were unsuccessful in this sale, so they left Galax about 2:00 o'clock P. M. on their return trip to Bristol. At a point on the highway several miles before reaching Marion, a car pulled up in front of their car, forced Roller

to stop his car and at the point of a gun, one of the occupants of the former car proceeded to get into the rear seat of Roller's car, and forced Roller to drive some distance up a side road and there demanded that Mrs. McCue turn over her pocketbook which contained the diamonds and ordered Roller and Mrs. McCue to remain there for a certain period of time before attempting to leave. After remaining as directed for about thirty minutes Roller and Mrs. McCue proceeded on to Bristol, arriving there about 7:30 o'clock. No report of the robbery was made to any one between the place of the alleged robbery and Bristol, although they drove through both the towns of Marion and Abingdon. Mrs. McCue testified that she wanted to report the robbery, but Roller insisted on going on to Bristol; but Roller denies this and insists that he would have made the report, but Mrs. McCue insisted on making no report until they reached Bristol.

Nichols and Roe, who were jointly indicted with Roller, confessed their part in the robbery and were the principal witnesses for the Commonwealth. They described how the plans to commit the robbery were laid on September 20th, in the office of Holston Small Loan Company by Roller, Nichols, Roe and one Cantor. That on the day of the robbery, Roe drove a Flying Cloud car owned by Roller to Wytheville, where he met Roller and Nichols, the latter having driven to Wytheville in company with one Red Smith on the same morning in a car furnished him by one Cantor at the instance of Roller. That at Wytheville, Smith took the Flying Cloud car to Bluefield, and Nichols and Roe followed Mrs. McCue and Roller to Galax and proceeded ahead of them on the return trip and waited at a filling station on the road to Marion until Mrs. McCue and Roller passed, then followed them to the point where the holdup was staged by Nichols. That after receiving the diamonds, Nichols and Roe drove to Bluefield, West Virginia, that night. That Roller and Cantor were to receive half of the diamonds and Nichols and Roe the other half. That Roe delivered to Roller two of

the diamonds on the morning of September 22nd around eight o'clock, on the street in Bristol. Roller denies any part in the robbery or being a party thereto in any manner whatsoever and denies that he received the two diamonds from Roe. He testifies that on the morning of September 22nd he, in company with his wife and his father-in-law, went to the funeral of his wife's uncle, for whom he was one of the pallbearers, and arrived there at 8 o'clock, at which time they understood the funeral was to take place.

The two diamonds which were supposed to have been delivered by Roe to Roller were later recovered in Knoxville, Tennessee.

The above is a mere outline of the testimony. Sundry witnesses testified in this case and various circumstances are revealed in the evidence which we will not attempt to detail here.

 Considering the whole evidence, we are of the opinion that the trial court committed no error in refusing to set aside the verdict of the jury under the first assignment of error. The evidence, conflicting as it is, presented a question for the jury and not for the court. The jury determines the weight and the credibility to be given the testimony under the instructions of the court, and its verdict cannot be disturbed unless plainly wrong.

The second assignment of error is to the refusal of the trial court to declare a mistrial, discharge the jury and grant a new trial during the argument of one of the attorneys assisting the attorney for the Commonwealth.

This assignment of error grows out of a statement made to the jury in the argument of the case by one of the attorneys assisting the attorney for the Commonwealth when he said to the jury:

"Roller could easily have explained his whereabouts on the morning after the robbery. Why didn't he have that good wife of his here to testify as to where he was before he went to the funeral of his uncle, Mr. Cassell?"

To which statement to the jury counsel for accused

objected and moved the court to discharge the jury, and grant a new trial, upon the grounds that the remarks were improper, which motion the court overruled after telling the jury that they should not consider the remarks made by the attorney about the failure of the wife of the accused to testify. Thereafter the court again called the attention of the jury to the statement made by the attorney with reference to the failure of defendant to have his wife testify as to certain matters, and the objection made thereto by counsel for the defendant and that the court had sustained the objection and told the jury to disregard the statement so made. The court further telling the jury at this time, "I now have the statute before me and will read you what the statute says in that regard: 'The failure of the wife to testify shall create no presumption against the accused nor be the subject of any comment before the court or jury, by the prosecuting attorney.' (Va. Code, section 6211.) It is your duty, and you shall, in your deliberations be governed accordingly."

We are of the opinion that the principles laid down in the cases of *Wilson* v. *Commonwealth,* 157 Va. 962, 162 S. E. 15, 16, control the decision of this question. In that case the court, speaking through Chief Justice Campbell, said: "In unequivocal language the legislature has said that in no case, except for an offense committed by the husband against the wife, shall she be 'allowed to be called as a witness' against her husband without his consent. * * * The evil which the legislature sought to correct is exemplified in the case at bar, viz.: The intentional effort of the attorney for the Commonwealth to force the accused to object to the introduction of his wife as a witness against him and thus, perhaps, have the jury place upon him the odium of seeking to prevent a fair investigation of the transaction. An accused should not, by wilful act, be placed in such an attitude before the jury by the representative of the Commonwealth whose duty to prosecute one accused of crime is coexistent with his duty

to see that the accused is accorded a fair and impartial trial."

This language is applicable to the case at bar. The court in the above case was referring to section 6211 of the Code, which further provides: "The failure of either husband or wife to testify, however, shall create no presumption against the accused, nor be the subject of any comment before the court or jury by the prosecuting attorney." The natural and reasonable inference is that the assistant attorney for the Commonwealth, by his argument in the instant case, sought to have the jury believe that if the wife of the accused had been called to testify in his behalf, her testimony would have been unfavorable to him, and, moreover, by the failure of the accused to call his wife to testify he (the accused) was seeking to prevent a fair investigation of the facts or purposely concealing evidence which he could have produced and which the jury had a right to have before them. This, as in the *Wilson Case, supra,* is one of the evils which the legislature sought to correct by section 6211 of the Code.

Under the evidence in this case, which, as we have seen, was highly conflicting, and upon which the jury could reasonably have found the accused guilty or not guilty, we will not say that the comments of the assistant prosecutor were not prejudicial to the accused. This is not a case in which the doctrine of harmless error should be applied. We will not presume that the comments were harmless. The plain language of the statute referred to creates an express inhibition and its violation by any prosecuting attorney is a violation of one of the fundamental principles of criminal jurisprudence in this jurisdiction. However, we withhold any decision of the question upon a case where such comment is made and where the evidence points clearly to the guilt of an accused and is substantially free from conflict. In other words, whether in such latter case the accused must show that he was prejudiced by the comments of the prosecuting attorney, we do not decide.

The accused was entitled under the law to a fair and impartial trial according to the law and evidence. The law by section 6211 of the Code explicitly forbids any comment by the attorney for the Commonwealth on the failure of the wife of the accused to testify, and the jury could draw legally no inferences or presumptions therefrom.

We are, therefore, of the opinion that the conduct of the assistant attorney for the Commonwealth was such as could not be cured by the admonition to the jury by the trial judge, and therefore this case must be reversed and remanded for a new trial.

In the view we take of this case it is not necessary to consider the third assignment of error.

*Reversed and remanded.*