# Richmond

LILLIAN MITCHELL, ETC. v. COMMONWEALTH OF VIRGINIA.

May 7, 1951.

Record No. 3787.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Smith, JJ.

The opinion states the case.

*Broudy & Broudy,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Lillian Mitchell was convicted of violating the provisions of Code, sec. 18-87, to-wit: keeping a house for the purpose of

prostitution, and sentenced on the verdict to ninety days confinement in jail.

The material evidence for the Commonwealth consists of the testimony of four police officers of the city of Norfolk, the substance of which is:

Eugene Lille was employed as a police officer on March 16, 1950. One of his first assignments was to investigate defendant's premises known as No. 114 Fenchurch street, Norfolk. On March 22, 1950, in an effort to gain admittance to these premises, Lille met a man named "Robert" in a restaurant, who agreed to go to the premises with him. On that same evening Robert accompanied Lille to the premises and introduced him to defendant. Lille told her that he had no money at that time, but that he desired to return at a later date. She replied: "Sure, Honey, it will be all right. Come back any time."

Sergeant J. F. Estes gave Lille two marked $5.00 bills to be used in obtaining evidence, and instructed him to ascertain, if he could, how many girls were kept by defendant for the purpose of prostitution. An arrangement was made between Lille and Estes whereby Lille would return to defendant's premises at 8:00 p. m. on March 23rd, and Estes, with other officers, would enter fifteen minutes later with a search warrant.

Pursuant to this plan, Lille returned to the premises and was recognized by defendant, who invited him into a bedroom. After identifying himself as required by defendant, she told him she would send him a girl. She left the room and a few minutes later a girl came in, but Lille intimated that he did not like her and sent her away. Shortly thereafter another girl came in with whom he discussed the price of intercourse. The girl examined his person and agreed to have intercourse with him for $10. Her attire consisted only of a skirt, blouse, shoes and stockings. After she had accepted the two marked $5 bills, she disrobed. At this moment defendant came back into the room and told the girl to dress, that police officers were at the door. She told the girl to go into a room on the left side of the hall, Lille was directed by her to go into another room on the right side of the hall and instructed to tell the officers he lived there. Lille paused in the hall and saw that there was an open door leading from the room the girl entered into the adjoining house—No. 116-118 Fenchurch street.

The officers who were then admitted were not working in

conjunction with Lille and Estes and were acting without the knowledge of the arrangement Estes had made with Lille. During their hasty and futile search they saw Lille, but did not know he was an officer and did not question him.

Immediately after these officers left by way of the front door, Sergeant Estes, accompanied by two officers, rang the doorbell. Defendant "peeped through the peephole" in the front door, saw the officers and opened the door, but did not unlock the screen door. Estes demanded admittance, stating that he had a warrant to search the premises, to which she relied: "Hell, it must be some mistake, the police officers just left here." She then slammed the door and fastened it. After some little delay, Estes started to force the door open with an ax, but this became unnecessary as defendant's husband, Frank Mitchell, opened it and admitted them.

Lille directed Estes and the two officers with him to the room into which the girl had gone. At that time a wardrobe, about 3½ feet wide, and 6 feet tall, with blankets on top of it, was in front of the door leading to the adjoining house. This was the door which Lille saw open when the girls first entered the room. The officers moved the wardrobe and found the door behind it padlocked. On the failure of defendant or her husband to furnish a key to the door, it was forced open. When the officers went through it into the adjoining house—Nos. 116-118 Fenchurch street—they saw another door partly open leading from House No. 116 to the street. The front part of the first floor of this house was used as a carpenter or machine shop, under the name of Frank Mitchell. The house contained three rooms on the ground floor, four bedrooms on the second, and two on the third.

No. 114 Fenchurch street contained ten bedrooms, three on the lower floor and seven on the upper floor. Each of the bedrooms in the two houses was furnished with a bureau, washstand, and a bed with only a thin spread thereon. None of these rooms was occupied at the time. The officers found in No. 114 a police radio, telephone and a secretary. In the secretary was a stack of money, in five, ten and twenty dollar bills, totalling more than $500, but the two marked $5 bills Lille had given the girl were not found. The officers also found two sheets of note paper. On one was written in pencil the names of thirty-three men who, within the previous six or eight months, had been

added to the police force of the city of Norfolk. On the other sheet were three initials—"R," "B," and "P,"—under each of which was a list of figures varying from five to twenty. The total sum of each of the three columns was divided by two.

Officer Stovall testified that during the time he and the other officers were in the house he saw defendant answer the front doorbell four different times, and each time he heard her tell the men who were seeking admittance "nothing doing tonight."

■ The evidence is amply sufficient, as defendant concedes, to support the verdict.

The second error assigned is based on the refusal of the court to declare a mistrial on the ground of an alleged improper remark made by police officer, J. F. Estes, a witness for the Commonwealth.

Estes testified that he had been familiar with the premises occupied by defendant for the past 15 years. The court promptly informed him that he must confine his testimony to his familiarity with the premises during the preceding 12 months. The witness, in answer to a question as to the reputation or character of the premises, said that it had the reputation of being a house of prostitution "and bootlegging joint."

Defendant moved for a mistrial on the ground that the reference to the house as a bootlegging joint was an attempt to prejudice the jury. The court overruled the motion and stated to the jury: "The part of the answer to the effect that it had the reputation of being a house of prostitution remains in the record, but you are not to be influenced in any way in considering the case or arriving at a verdict that these premises had the reputation of being a bootlegging establishment or a similar place."

No authority is cited in support of defendant's contention. The statute (Code, sec. 18-87) provides: "In a prosecution for this offense the general character of the house may be proved."

■ We held in *Wilson* v. *Commonwealth*, 132 Va. 824, 111 S. E. 96, that the words "general character" used in this section were synonymous with the words "general reputation." General reputation is the opinion that the people in the community have formed of the person or thing involved. Reputation of a person as to some specific trait, such as truthfulness, chastity, or violating liquor laws, is not necessarily the general reputation of such person as to all traits. The statute does not expressly limit proof of the "general character" of a house to any specific

element. A statement that the house has the reputation of being a bootlegging joint is less derogatory than a statement that it has the reputation of being a "bawdyhouse" or a "house of prostitution."

However, the court's instruction to the jury to disregard so much of the statement of the witness as to the reputation of the premises as a bootlegging joint, makes it unnecessary to decide whether proof of reputation of the premises as a bootlegging joint is or is not admissible.

Defendant's third contention is that the refusal of the court to declare a mistrial on the ground of improper argument of the attorney for the Commonwealth to the jury constitutes reversible error.

"Robert," who introduced Lille to defendant, was not called as a witness. Defendant's attorney argued that the inference from the failure of the Commonwealth to produce him as a witness was that if he had been called his testimony would not have corroborated the testimony of Lille. The attorney for the Commonwealth, in reply to this argument, said: "As to the moving of the wardrobe, Frank Mitchell was there, this woman's husband, and I might say that my friend is right, that where evidence is available to the Commonwealth and it is not offered, then that evidence would not sustain its position, but the shoe fits both feet."

The court evidently saw the trend of the argument and before defendant interposed objection, stopped the attorney for the Commonwealth and called counsel to the bench for a conference out of the hearing of the jury.

Defendant's attorney moved the court to declare a mistrial on the ground that the attorney for the Commonwealth had violated the provisions of Code, sec. 8-288, in that he commented on the failure of defendant's husband to testify in her behalf. The court signified its willingness to instruct the jury to disregard the argument, but did not do so because the attorney for defendant objected, stating that such an instruction would simply emphasize the improper remarks.

The remarks were improper. Simply because defendant's attorney exercised his right in his argument to direct the attention of the jury to the inference which they might draw from the failure of the Commonwealth to produce a witness, did not give the attorney for the Commonwealth the right, directly or in-

directly, to violate the mandate of the statute prohibiting him from commenting on the failure of defendant to call her husband as a witness.

After the conference between the attorneys and the court, the attorney for the Commonwealth renewed his argument as follows: "Returning to my statement where I left off, where evidence is available to the defense and it has not been offered, then it can be concluded that that evidence would not sustain their position. That version was applied to the Commonwealth's evidence, and the shoe fits both feet.

"If you will recall, gentlemen, in the testimony as given by this defendant, Lillian Ausley, she stated that on the day of the 23rd (22nd), the day in question, she had gone to Craney Island to see her mother and her sister was with her at that time. * * * Her sister has not testified here as to going with her."

The comment on the failure of the defendant to call her sister as a witness was an attempt on the part of the attorney for the Commonwealth to minimize the improper remarks he was making when the court stopped him.

Defendant, who was the only witness who took the stand in her behalf, contradicted much of the testimony of Lille, and some of the testimony of the other officers, but she made no attempt to explain the physical facts to which the officers testified, and other circumstances which clearly indicated that she was maintaining a house for the purpose of prostitution. The only logical conclusion, based on a careful consideration of all the evidence introduced by the Commonwealth and defendant, is that defendant is guilty as charged.

This conclusion narrows the question presented to whether, in a criminal case, an indirect reference made by a prosecuting attorney to the failure of a wife to introduce her husband as a witness, is such a violation of the statute, and so prejudicial, as to require a new trial.

A prosecuting attorney, by Code, sec. 19-238, is forbidden to comment on the failure of a person charged with a crime to testify in his own behalf in the same language that he is forbidden by Code, sec. 8-288, to comment on the failure of a husband or wife to testify in behalf of the other. The test of the applicability of either statute should be the same when the facts bring the case within the influence of either one or the other.

The subject is discussed at length in numerous cases annotated in 84 A. L. R. 784, where at page 795, this is said:

"The weight of authority seems to be that comments of the prosecuting attorney on the failure of the defendant to testify in a criminal case, though highly improper, may under some circumstances work no injury, where the trial judge promptly intervenes, excluding the comments and admonishing the jury to disregard them. In other words, comments of that kind stand on very much the same footing as other improper arguments, and whether they call for a reversal or not depends on whether, after a full consideration of all the circumstances, including the action of the trial judge at the time they were made, the appellate court is of opinion that no prejudice resulted."

This court held in *Price* v. *Commonwealth*, 77 Va. 393, that the comment of the prosecuting attorney on the failure of the accused to testify was improper, but refused to reverse the judgment of conviction on two grounds: (1) that the accused was not prejudiced because the evidence was conclusive as to his guilt, and (2) that no exception was taken to the improper remarks until after the verdict.

This decision is in line with the general rule stated in 3 Am. Jur., Appeal & Error, sec. 1078, where it is said: "The principle of prejudice is invoked in many cases; and it is held that the misconduct of the prosecuting attorney in commenting on the failure (of the accused) to testify does not result in a miscarriage of justice warranting a reversal where the evidence of defendant's guilt is clearly established."

The numerous cases cited in the footnote sustain the text.

The prosecuting attorney in *Roller* v. *Commonwealth*, 161 Va. 1104, 1108, 172 S. E. 242, in his argument to the jury, said: "Roller (the accused) could easily have explained his whereabouts on the morning after the robbery. Why didn't he have that good wife of his here to testify as to where he was before he went to the funeral of his uncle, Mr. Cassell?"

The evidence in the *Roller Case* as to the guilt or innocence of the accused was highly conflicting and would have supported a verdict for or against him. It was held that the conduct of the prosecuting attorney was such that the error could not have been cured by the court's admonition to the jury to disregard the improper remarks. However, the late lamented Justice Gregory, speaking for the court, said: "* * * We withhold any

decision of the question upon a case where such comment is made and where the evidence points clearly to the guilt of an accused and is substantially free from conflict. In other words, whether in such latter case the accused must show that he was prejudiced by the comments of the prosecuting attorney, we do not decide.''

All the evidence in *Elliott v. Commonwealth,* 172 Va. 595, 1 S. E. (2d) 273, pointed clearly to the guilt of the accused. In that case, the accused did not take the stand. Enoch Dodson, testifying for the Commonwealth, had implicated him in the crime charged. The prosecuting attorney, in his argument, pointed his finger at the accused, and said: ''The defendant has not denied what Enoch Dodson said.'' Counsel for the accused objected, and moved for a mistrial. The court overruled the motion and instructed the jury to disregard the improper remarks. The majority of the court held that the improper argument violated a fundamental right of the accused, that the doctrine of harmless error was inapplicable, and reversed the judgment of conviction. Mr. Justice Gregory, with two other members of the court concurring, rendered a dissenting opinion, in which it was stated that this court had never before reversed a judgment of conviction for such improper argument where all the evidence introduced clearly proved that the accused was guilty. It was emphasized that the application of Code, sec. 8-288, must be considered with the statute of jeofails (sec. 8-487), which provides: ''No judgment * * * shall be reversed * * * for any error committed on the trial where it plainly appears from the record and the evidence * * * that the parties have had a fair trial on the merits and substantial justice has been reached. * * *''

After quoting this statute, Mr. Justice Gregory said:

''It has been said of our liberalizing statutes, and especially of sec. 6331 (now 8-487) that they are based upon a sound public policy and are supported by the unanswerable logic of the progressive exponents of the best legal thought, with which this court has been in full accord. *Standard Paint Co. v. Vietor & Co.,* 120 Va. 595, 91 S. E. 752.

''We have often said that section 6331 (now 8-487) was intended to be a very substantial change in the statute of jeofails; that it was intended to render it practically impossible for a case to be reversed on any mere technicality, and to allow all

judgments to stand when fairly rendered on the merits, if substantial justice has been reached. The section applies to criminal as well as civil cases. *Smith* v. *Commonwealth,* 168 Va. 703, 190 S. E. 91. * * *

"I am of the opinion that the violation of the statute (Sec. 4778—now sec. 19-238) by the Commonwealth's Attorney would constitute prejudicial and reversible error in a doubtful case, but in a case where all of the evidence clearly points to the guilt of the accused, and no prejudicial error is shown by the verdict or otherwise, and where it is not probable that any other verdict than one of guilt could be sustained, the error would be harmless and not sufficient for a reversal of the judgment."

Defendant rejected the alert trial judge's offer to explain to the jury defendant's right under the statute and to inform them of their duty to disregard the improper argument. This being true, we must consider the case as we would have considered it if defendant had permitted the trial judge to give the instruction.

A review of the evidence and other incidents of the trial reveal that the trial judge was eminently fair in all of his rulings and in his conduct of the trial. When confronted with the situation presented by the indirect reference to the failure of defendant's husband to testify he was in a much better position than this court now is to determine whether the remarks were prejudicial to defendant. He, in the exercise of that sound judicial discretion with which the law clothes him, declined to declare a mistrial. There is nothing in the verdict or the record which tends to show that defendant was prejudiced.

The jury fixed the punishment at ninety days in jail. They could have imposed the maximum penalty of twelve months in jail. If the judgment is reversed and a new trial awarded a verdict of guilty is the only one that any fair-minded jury could return on the evidence. If we give the statute of jeofails the consideration which we have repeatedly said must be given it, then we are forced to the conclusion that the indirect reference of the prosecuting attorney to the failure of the husband to testify is harmless error.

The fourth contention of defendant is that under the different statutes dealing with the punishment for keeping a house for the purpose of prostitution, and kindred offenses, no jail sentence can be imposed upon the conviction of an accused.

We hold that this contention is unsound for the reasons stated in *Gaskill* v. *Commonwealth,* 185 Va. 440, 39 S. E. (2d) 296.

The judgment of the trial court is affirmed.

*Affirmed.*