COURT OF APPEALS OF VIRGINIA

Present:    Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


BRENDA PARKER
                                                    OPINION BY
v.        Record No. 1700-02-1              JUDGE ROBERT J. HUMPHREYS
                                                  FEBRUARY 3, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                          William H. Shaw, III, Judge

            Norman Lamson for appellant.

            Richard B. Smith, Senior Assistant Attorney General (Jerry W.
            Kilgore, Attorney General, on brief), for appellee.


        Brenda Parker appeals her conviction, after a bench trial, for operating a "food

manufacturing plant" without inspection, in violation of Code § 3.1-398.1.  Parker designates five

Questions Presented on appeal, and by three separate motions filed in this Court, has raised

additional issues neither presented in her petition for appeal nor raised in the trial court.  She asserts

we must consider the issues raised in her various motions because they represent "jurisdictional"

defects in her prosecution.  For the reasons that follow, we deny each of Parker's motions and

affirm her conviction.

                                    I.  Background

        "On appeal, we review the evidence in the light most favorable to the party prevailing

below, together with all reasonable inferences that may be drawn."  Benton v. Commonwealth, 40

Va. App. 136, 139, 578 S.E.2d 74, 75 (2003).

In early 2000, Parker owned and operated Sassy Springs Farm in Gloucester County, Virginia. After learning "information concerning [Parker] making and selling cheese from an article that was in the paper," Donna Bonner, a Regional Manager with the Virginia Department of Agriculture in Dairy Services, called Parker in March of 2000.[1] Bonner spoke with Parker

> about trying to work with her to inspect her farm, to get it in compliance, because it was not under inspection. And to be able for food inspectors and [Bonner] to be able [sic] to come to the farm, and look at the facilities, and do an inspection and find ways to help her comply with the Virginia food law.

On March 9, 2000, Bonner sent Parker a letter, enclosing "copies of the Virginia Food Laws, Part 101 – Food Labeling, the Code of Federal Regulation (CFR 21), the Current Good Manufacturing Practice in Manufacturing, Packing or Holding Human Food and Part 133, Cheeses and Related Cheese Products from the Code of Federal Regulation (CFR), number 21."

On September 28, 2000, Jim Morano, a Compliance Officer with the Virginia Department of Agriculture and Consumer Services (VDACS), John Purcell, an Assistant Attorney General for the Commonwealth of Virginia, Christopher Thackston, a Field Inspector with VDACS, and David Lee Dansey, an Environmental Specialist with VDACS, went to Parker's farm to investigate a "goat cheese" "product [that] had been offered for sale," that they "knew [they] didn't have . . . on record." Dansey and Thackston approached Parker's door, while Morano and Purcell remained in their vehicle. When Parker answered her door, Thackston showed Parker his credentials and told her that he wanted to "make an inspection."[2] Parker told him "she was not ready for [him] to make an inspection at this time." Thackston then showed Parker the "food laws and tr[ied] to point out the section of the law that gives [them] the right to come in and make inspection of a facility that is

---

[1] Donna Bonner was formerly known as "Donna Izac."

[2] Dansey testified they specifically told Parker they were there to "make an inspection of her cheese processing operation."

manufacturing products that are being offered for sale for food." Parker responded that "she was still not going to let [him] in," and that "she had heard a lot of bad things about the Department of Agriculture from Christine, and that [they] were trying to put the little people out of business." Parker then requested that they "give her a little time before she allow[ed] [them] in." Thackston agreed to "give [Parker] a week to do whatever she felt like she needed to do to get ready." He told her they would contact her "later to make another inspection," and left copies of the "food laws and regulations" with her. He and the other men then left the premises.

Dansey called Parker "within a week or so." Parker told Dansey that "she didn't want to be inspected at that time. She was sending a letter to [VDACS] and she was upset that [Thackston and Dansey] came up on her property."

Parker subsequently sent VDACS a certified letter, dated October 26, 2000, which stated as follows, in relevant part:

> On September 28, 2000 agents [sic] Christopher A. Thackston and D.L. Dansey from your Department entered the curtilage area of my home in violation of two (2) No Trespassing signs.
>
> Notice is hereby given that if any such attempt is made to invade my privacy in the future without a proper warrant supported by probable cause, that court action may be taken against any and all persons so involved in the matter.

On November 8, 2000, F.B. Barham, Regional Manager of the VDACS Food Safety Program, sent Parker a certified letter informing her that her refusal to permit the September 28, 2000 "attempted inspection of [her] goat cheese manufacturing operation," and her certified letter of October 26, 2000, "evidenced the refusal to permit entry to [her] manufacturing facility for the purposes of inspection and taking a sample," "a serious violation of the Virginia Food Laws." The letter further informed Parker that a show cause hearing would be held on November 16, 2000, to

give her an opportunity to show cause why "this violation" should not be referred to the Commonwealth's Attorney.

Parker did not attend the hearing, but responded by letter, dated November 16, 2000, stating as follows, in pertinent part:

> Let it be understood by everyone at your agency that at this time I am NOT making any goat cheese for sale to the public as I told Ms. Bonner.  Therefore, any inspection of my home kitchen is unwarranted at this time as would be any meeting with your compliance officers as there is nothing that I am to be in compliance with if I am not producing anything.

> Further, as I expressed to Ms. Bonner, should I decide at a future date to manufacture or sell farmstead goat cheese, I would request from your agency FULL disclosure of any pertinent rules and regulations as well as any license or permit that you might be able to issue.

> I trust that there will not be any further need for contact by your office, or I will pursue legal counsel.

(Emphases in original).

Morano, who acted as the hearing officer during the November 16, 2000 show cause hearing, responded to Parker by letter dated November 17, 2000.  In the letter, he informed Parker that based upon her representation that she was not making goat cheese for sale to the public, there was no need for the agency to inspect her establishment at the present time.  However, he warned Parker that should she "decide to manufacture goat cheese or any other food products for sale at a future date," she should notify VDACS prior to beginning such manufacturing so that "appropriate arrangements [could] be made for an inspection and discussion of the Virginia Food Laws and applicable regulations."  He further informed Parker that "[s]hould future attempts to inspect [her] goat cheese manufacturing facility result in [her] refusal of entry for the purpose of making an inspection or taking of samples, this matter may be referred to the Commonwealth's Attorney."

- 4 -

On August 4, 2001, Stephanie Madison, a Food Safety Specialist with VDACS observed Parker selling goat cheese and other products at the Irvington Farmer's Market in Lancaster County, Virginia. Madison approached Parker and purchased six jars of goat cheese in oil from her. The jars bore a label that had the words "Sassy Springs Farm" on it, with a Gloucester address.[3] Madison asked Parker how she made the product, and Parker responded "she infused the product with oil, with whatever herbs or flavorings for that particular product," and "put the goat cheese in there." Parker then offered Madison recipe cards.

Morano subsequently consulted with the Gloucester Commonwealth's Attorney, who advised him to obtain summonses for Parker's violations.[4] On October 15, 2001, a Gloucester County magistrate issued two summonses. The first charged Parker with refusing entry for purposes of inspection on September 28, 2000, in violation of Code § 3.1-388(e). The second charged Parker with having operated a "food manufacturing plant without it having been inspected by the Commissioner," on or about August 4, 2001, in violation of Code § 3.1-398.1.[5] On January 24, 2002, the Commonwealth's Attorney withdrew the Code § 3.1-388(e) refusal charge and the general district court judge convicted Parker of violating Code §3.1-398.1. Parker appealed her conviction to the circuit court.

---

[3] The circuit court judge explicitly found that the label on the jar was "listed as Sassy Springs. It was made at the farm in Gloucester County."

[4] This information was presented to the trial court in the form of an unchallenged proffer by the Commonwealth's Attorney. See Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977).

[5] The record reflects that, prior to her trial on these charges in general district court, Parker, acting *pro se* filed a motion to amend the summons alleging a violation of Code § 3.1-398.1. In her motion, Parker contended that the summons "incorrectly" stated the offense as a Class 1 misdemeanor. Thus, Parker requested the court to amend the summons to indicate that the offense was "punishable under § 3.1-418," as an unclassified misdemeanor. The record contains no ruling on Parker's motion in this regard.

Prior to her circuit court trial on the "manufacturing" charge, Parker filed a *pro se* motion to dismiss the charge contending that she was not given prior notice of the contemplated charge, and an opportunity to "present [her] views," as required by Code § 3.1-392. After retaining counsel, Parker filed "supplemental grounds" in support of the motion to dismiss, alleging that, because the Commissioner of VDACS himself had not caused the charge to be instituted, the Commonwealth had again violated Code § 3.1-392. Accordingly, Parker argued the Commonwealth had violated her right to "state and federal due process of law" and "caused the general district court not to have jurisdiction" over the matter.

Prior to her circuit court trial, Parker argued in support of her motion to dismiss. As to Parker's first contention, concerning notice, the court agreed to take the matter under advisement and asked the parties to "make that a part of the case." In conjunction with her second argument, concerning the Commissioner's institution of the charge, Parker argued "there is one other matter, that you have to read [Code §] 3.1-398.1 with [Code §] 3.1-418 . . . ." "[Code §] 3.1-418 says that if you don't comply upon demand, then you're guilty of a misdemeanor and you get up to a $100 fine and up to 100 days in jail. So there is also an issue – our position was there was no showing of a demand that she allow inspection by the Commissioner." The Commonwealth replied, "She's not charged under that." The court then stated, "She's not charged with that," and subsequently held that Parker's reading of the statute and the term "Commissioner" was too narrow. Pointing out that even if it was not, the requirement was not jurisdictional, and the court overruled Parker's motion.

At the close of the Commonwealth's evidence, Parker made a "motion to strike and a motion to dismiss" contending again that VDACS failed to provide Parker with notice of the contemplated charge for violating § Code 3.1-398.1, operating a food manufacturing plant, and an opportunity for a hearing, as required by Code § 3.1-392, and that, pursuant to Code

§ 3.1-392, it was the Commissioner himself who must refer the charge to the Commonwealth's Attorney. Parker argued that the failure to comply with these requirements deprived the general district court and, thus, the circuit court, of jurisdiction in the matter. In the alternative, Parker argued that the Commonwealth had failed to establish that she operated a "food manufacturing plant," as defined by Code § 3.1-398.1, contending that her farm and home kitchen did not fall within that definition and further contending that the Commonwealth had failed to establish where the goat cheese, which was offered for sale in Lancaster, was actually made. In conjunction with these arguments, Parker argued:

> So, I submit that viewing the evidence in the light most favorable to the Commonwealth, they haven't met those elements. *I reiterate, I still contend under [Code § 3.1-]418, which says that you have got to comply with the provisions on demand, if you don't upon demand, you're guilty. When the statute says it's got to be inspected by the commissioner, it means the commissioner. . . . And the demand never was that the commissioner inspect,* but that strangers, who came through no trespassing signs without any notice be permitted to make the inspection.

(Emphasis added).

Finding that: 1) the evidence was sufficient to prove the cheese was made at Sassy Springs Farm; 2) that the farm constituted a "food manufacturing plant" as defined in the statute; 3) that Parker was on notice of the charges contemplated before the November 16, 2000 hearing; 4) that Parker had specifically waived, by her letter of November 16, 2000, the need for further notice, thus, Parker's rights were not violated and the court had jurisdiction over the matter, the court denied Parker's motions.

Parker presented no evidence on her behalf, but renewed her "motion to strike and the points that [she] made on that" in her closing argument. The circuit court subsequently found

Parker guilty and sentenced her to pay a fine of $100, and serve 30 days in jail, all of which was suspended upon certain conditions.[6]

## II. Analysis

On appeal, Parker raised, and this Court granted an appeal with respect to five Questions Presented. Parker contends that the trial court erred in refusing to grant her motions to dismiss and strike, because 1) the Commonwealth failed to prove that she was provided with notice, and an opportunity to be heard, "with regard to a contemplated criminal charge" under Code § 3.1-398.1; 2) the Commonwealth failed to prove that the Commissioner of VDACS personally reported the alleged violation to the Commonwealth's Attorney; 3) the criminal proceedings, for these reasons, violated her right of due process, and the general district court and circuit court were without jurisdiction to conduct the proceedings; 4) the Commonwealth failed to produce sufficient evidence to establish that Parker operated a "food manufacturing plant," within the meaning of Code § 3.1-398.1; and 5) the Commonwealth failed to prove that the Commissioner of VDACS personally "demanded" inspection of Parker's premises, thus Parker could not be found guilty of a misdemeanor pursuant to Code §§ 3.1-398.1 and 3.1-418.

Subsequent to filing her briefs on appeal, Parker filed three separate motions with this Court. Parker filed additional briefs with two of these motions, one in excess of 30 pages, and another in excess of 25 pages, without requesting leave of Court. See Rule 5A:19. Parker raises several additional issues in these motions, issues that were not raised in Parker's petition for appeal, nor granted by this Court as viable questions presented. See Rule 5A:12.

---

[6] The record also reflects that during sentencing, the trial court asked the Commonwealth's Attorney "What is the maximum fine? . . . Where is it?" The Commonwealth's Attorney replied "$100. . . . 418."

In the first motion and supporting brief, entitled "Appellant's Objection to a Panel Hearing The Case Initially," Parker requested this Court to take the case directly *en banc* and to dismiss for lack of subject matter jurisdiction. Parker argued as follows: 1) that Code § 3.1-398.1 is facially unconstitutional because it violates the Fourth Amendment; 2) that such a claim is not barred pursuant to Rule 5A:18 as it is "jurisdictional"; 3) that this Court should overrule McClellan v. Commonwealth, 39 Va. App. 759, 576 S.E.2d 785 (2003), "as in flagrant error"; and, 4) that McClellan should not be retroactively applied. The record reflects that Parker raises each of these issues for the first time on appeal.

In Parker's second motion and supporting brief, entitled "Appellant's Second Motion to Dismiss For Lack of Subject Matter Jurisdiction, This Time on Grounds of [sic] She Was Charged With and Convicted of a Non-Offense," Parker argued that Code § 3.1-398.1 creates only a civil offense, not a criminal offense. Contending that such a claim is "jurisdictional," Parker again claims that she may raise this issue for the first time on appeal. In the alternative, Parker requests that this Court consider her contention under the "ends of justice" or "good cause" exceptions to Rule 5A:18. The record similarly reflects that Parker raises these issues for the first time on appeal.

In Parker's final motion, filed after oral argument, entitled "Appellant's Motion to Declare The Judgment in McClellan v. Com., 39 Va. App. 759, 576 S.E.2d 785 (2003) Void For Lack of Jurisdiction," Parker seeks to collaterally attack this Court's decision in McClellan, arguing that the decision is void because the

> charge and purported conviction [in that case] are of a non-offense, and the conviction does not contain "findings" of a criminal offense as required by Va. Code sec. 19.2-307 and Rule Form 10, [sic] said judgment is also void because (1) it bears no name of a judge, (2) nor is there a date of entry and (3) a signature of a judge

as required by Va. Code sec. 19.2-307 and Va. Sup. Ct. Rule 3A:22 (Rule 3A:1), and Form 10.

Once again, the record reflects that Parker raises these issues for the first time on appeal.

A.

Because Parker's motions raise issues she contends are "jurisdictional," we address her arguments relating to these motions before reaching the merits of her appeal. In beginning our analysis, we admonish counsel that "[o]n appeal, we will consider '[o]nly those arguments presented in the petition for appeal and granted by this Court . . . .'" Megel v. Commonwealth, 37 Va. App. 676, 679, 561 S.E.2d 21, 22 (2002) (quoting Alexander v. Commonwealth, 28 Va. App. 771, 776, 508 S.E.2d 912, 914, aff'd on reh'g en banc, 30 Va. App. 152, 515 S.E.2d 808 (1999), rev'd on other grounds by Commonwealth v. Alexander, 260 Va. 238, 531 S.E.2d 567 (2000)); see also Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991). "Rule 5A:12(c) specifically provides that '[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals.'" Id. (quoting Rule 5A:12(c)); see also Rule 5A:20(c). Nevertheless, as Parker's counsel points out:

> Subject matter jurisdiction is granted by constitution or statute. Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 894 (1947). It [thus,] cannot be waived and any judgment rendered without it is void *ab initio*. Moreover, lack of subject matter jurisdiction "may be raised at any time, in any manner, before any court, or by the court itself." Id., 43 S.E.2d at 893.

David Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 509 (2000), overruled on other grounds by Nelson v. Warden, 262 Va. 276, 285, 552 S.E.2d 73, 77 (2001). Thus, we only address those contentions that Parker raises as "jurisdictional."[7]

---

[7] Prior to oral argument, we denied Parker's request to take this matter directly *en banc*.

Parker first argues that "the statutes which define the offense and affix the penalty against [Parker], . . . Code [§§ 3.1-398.1 and 3.1-418]" are in violation of the Fourth Amendment. Specifically, Parker contends that Code § "3.1-398.1 violates the Fourth Amendment on its face." Parker further contends her argument of facial constitutionality is "jurisdictional" and can be raised at any time. We have recently recognized, however, that a "jurisdictional" claim, which would render a judgment void, presupposes a matter of subject matter jurisdiction. Edwards v. Commonwealth, 41 Va. App. 752, 589 S.E.2d 444 (2003). An issue of subject matter jurisdiction, as distinguished from an issue of the exercise of subject matter jurisdiction, concerns the "'power of a court to adjudicate a specified class of cases.'" Nelson, 262 Va. at 281, 552 S.E.2d at 75 (quoting Moore, 259 Va. at 437, 527 S.E.2d at 409); see also Moore, 259 Va. at 437, 527 S.E.2d at 409 ("emphasizing the necessary distinction to be drawn . . . between the power of a court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction,' and the authority of a court to exercise that power in a particular case").

There is no dispute here that the general district court has exclusive original jurisdiction over misdemeanor criminal offenses. Code § 16.1-123.1. There is likewise no dispute that the circuit court had *de novo* appellate jurisdiction. Code §§ 16.1-132 and 17.1-513. Moreover, in her motions and supporting briefs on appeal, Parker does not contend that the offense occurred outside the Commonwealth of Virginia, or that the court otherwise lacked jurisdiction over her person.[8] See Edwards, 41 Va. App. at 767, 589 S.E.2d at 451. Thus, Parker's argument in this regard does not rise to the level of a subject matter jurisdictional claim, rendering her conviction void. Id.

---

[8] We note that Parker raised no issue concerning "territorial jurisdiction" in her motions and supporting briefs filed after her briefs on appeal. However, in her briefs on appeal, Parker did raise such an issue. See below for our discussion of the merits of that issue.

Parker's reliance upon Pine v. Commonwealth, 121 Va. 812, 93 S.E. 652 (1917), does not change our decision.  In Pine, the Supreme Court of Virginia held:

> Every indictment is based upon the existence of a valid law annexing a penalty to the offense charged.  If that law is unconstitutional, it is void.  It is no law at all, and there is no penalty to inflict.  So soon, therefore, as this fact is brought to the attention of the court in any way, whether by demurrer, pleas, motion, or otherwise, the case is at once dismissed, as there is no offense to be punished.  It need not be specially pleaded.  This rule applies to the appellate court as well as the trial court, although the point is made in the appellate court for the first time.  Adkins v. City of Richmond, 98 Va. 91, 34 S. E. 967, 47 L. R. A. 583, 81 Am. St. Rep. 705, and cases cited.

121 Va. at 820-21, 93 S.E. at 654.  Although Pine has not been expressly overruled and continues to be valid precedent, in Jones v. Commonwealth, 230 Va. 14, 334 S.E.2d 536 (1985), the Supreme Court of Virginia explicitly refused to consider certain arguments of the constitutional facial validity of an Arlington County code section, as they were not properly preserved.  The Court stated as follows in a footnote:

> In this appeal, we consider only Jones' arguments based upon the Fourth Amendment.  Jones also argues on appeal that § 17-13(c) of the Arlington County Code violates his First Amendment "right to remain silent" and his Fifth Amendment right against self-incrimination, but he did not raise these points in the trial court, and we will not consider them here.  Rule 5:25.  Neither will we consider any contention with respect to § 17-13(c) which Jones may have made in the trial court but has not pursued here.  Rule 5:25.

Jones, 230 Va. at 18 n.1, 334 S.E.2d at 539 n.1; see also Bradshaw v. Commonwealth, 228 Va. 484, 492 n.2, 323 S.E.2d 567, 569 n.2 (1984) (refusing to consider challenges of facial constitutionality based upon Code § 18.2-31(g) because they were not raised at trial).  Given the Supreme Court of Virginia's decisions in these later cases, as well as its decisions in David Moore and Nelson, specifically distinguishing between a court's possession of subject matter jurisdiction and its ability to exercise such jurisdiction (making convictions under the latter

claims merely voidable, versus void), we do not understand Pine to elevate Parker's newly

coined argument to the level of a jurisdictional issue, rendering her conviction void.

Moreover, the record here demonstrates that Parker lacks standing to raise a claim of

facial constitutional validity.  Code § 3.1-398.1 provides as follows:

> Inspections required to operate food establishment. — No person
> shall operate a food manufacturing plant, food storage warehouse,
> or retail food store until it has been inspected by the
> Commissioner.  This section shall not apply to food manufacturing
> plants operating under a grant of inspection from the Bureau of
> Meat and Poultry Inspection or a permit from the Bureau of Dairy
> Services of the Virginia Department of Agriculture and Consumer
> Services and Grade A fluid milk manufacturing plants and
> shellfish and crustacea processing plants operating under a permit
> from the Virginia Department of Health.  This section shall also
> not apply to nonprofit organizations holding one-day food sales.

Code § 3.1-418 states:

> Punishment for failure to comply with requirements of title. —
> Any manufacturer, dealer or person who refuses to comply upon
> demand with the requirements of Chapters 20 (§ 3.1-361 et seq.),
> 21 (§ 3.1-420 et seq.), and 30 (§ 3.1-867 et seq.) of this title or who
> shall impede, obstruct, hinder or otherwise prevent or attempt to
> prevent any chemist inspector or other person in the performance
> of his duty in connection with such chapters, shall be guilty of a
> misdemeanor, and, unless otherwise specified, upon conviction be
> fined not less than $10 nor more than $100, or be imprisoned not
> more than 100 days, or both, in the discretion of the court; and
> such fines, less the legal costs, shall be paid into the state treasury.

Although Parker claims that these statutes are unconstitutional "on [their] face because [they]

coerce[] submission to warrantless searches under threat of criminal prosecution where the

inspector has unbridled discretion as to the places to be searched, and the time, manner and scope

of the search," the record reflects that Parker was never subjected to such an inspection or

"search."  Indeed, the charge brought against Parker for improperly refusing to submit to such a

"search," in violation of Code § 3.1-388, was *nol prossed* by the Commonwealth.  Parker was

proceeded against and convicted only in accordance with Code §§ 3.1-398.1 and 3.1-418 – each

of which, as applied to Parker, merely required Parker *not to operate* her food manufacturing establishment without an appropriate inspection.

"As a general rule, where a statute is constitutional as applied to a litigant, the litigant has no standing to challenge the statute on the ground that it may be unconstitutional on its face, that is, as applied to a third person in a hypothetical situation." Esper Company v. Commonwealth, 222 Va. 595, 597, 283 S.E.2d 185, 186 (1981). Thus, it is clear that, on this record, Parker lacks standing to challenge the constitutional facial validity of these statutes.

We further find no merit in Parker's contention that Code § 3.1-398.1 is a civil versus criminal offense, thereby depriving the general district court, and thus the circuit court on *de novo* review, of subject matter jurisdiction. Parker concedes that Code § 3.1-398.1 falls within the ambit of Code § 3.1-418, providing the penalty for failure to comply, upon demand, with the requirements of "Chapters 20 (§ 3.1-361 et seq.), 21 (§ 3.1-420 et seq.), and 30 (§ 3.1-867 et seq.) of this title." Indeed, "[a]ll statutes on the same subject matter, i.e., those standing *in pari materia*, must be considered together and harmonized if possible." Dalton v. Commonwealth, 29 Va. App. 316, 336, 512 S.E.2d 142, 152 (1999), rev'd on other grounds by Commonwealth v. Dalton, 259 Va. 249, 524 S.E.2d 860 (2000). Moreover, "[i]n construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). "[A] fundamental rule of statutory construction requires that courts view the entire body of legislation and the statutory scheme to determine the 'true intention of each part.'" Virginia Real Estate Bd. v. Clay, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989) (quoting McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)). In light of this, we have little doubt that the legislature intended, by enacting Code § 3.1-418, to make a failure to comply with Code § 3.1-398.1 a criminal offense. Code § 3.1-398.1 is clearly a criminal statute when read *in pari materia* with

- 14 -

Code § 3.1-418. Thus, Parker's argument in this regard, once again, does not rise to the level of a subject matter jurisdictional claim, rendering her conviction void. See Edwards, 41 Va. App. at 767, 589 S.E.2d at 451.

As stated above, although the record reflects that Parker, acting *pro se*, filed a motion before the general district court seeking to amend the summons to include Code § 3.1-418, Parker contended only that the summons "incorrectly" stated the offense as a Class 1 misdemeanor and requested the court to amend the summons to indicate that the offense was "punishable under § 3.1-418," as an unclassified misdemeanor. Parker did not contend then, as she does now on appeal, that the offense charged was not "criminal" without an accompanying reference in the summons to Code § 3.1-418. Furthermore, the record contains no ruling on Parker's motion, although no amendment is apparent on the summons.

In addition, contrary to the statement in the dissent, the record reflects that Parker never claimed below that the summons failed to state a criminal offense. Instead, Parker argued:

> [T]here is one other matter, that you have to read 3.1-398.1 with 3.1-418 [sic]. . . . 3.1-418 says that if you don't comply upon demand, then you're guilty of a misdemeanor . . . . So there is also an issue – our position was there was [sic] no showing of a demand that she allow inspection *by the Commissioner. . . . It has to be the Commissioner himself that does the inspection.*

(Emphases added). Thus, it is clear that Parker raises this specific claim – that Code § 3.1-398.1 creates a civil versus criminal offense – for the first time on appeal. Defects in the charging instrument are ordinarily waived unless raised before trial. See Rule 3:A9(b)(1). Accordingly, and because we have found that this claim is not "jurisdictional" in nature, we refuse to consider it on the merits because the record demonstrates that Parker failed to properly preserve the claim for purposes of appeal. See Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299, 308, 494

S.E.2d 484, 489 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

Furthermore, we find no reason on this record to invoke an exception to Rule 5A:18. Indeed, this is not a case - as suggested by the dissent - where a defendant was convicted of a "non-existent" offense.

> Under Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary situations when necessary to enable us to attain the ends of justice. The laudatory purpose behind Rule 5A:18, and its equivalent Supreme Court Rule 5:25, frequently referred to as the contemporaneous objection rules, is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary. The rules promote orderly and efficient justice and are to be strictly enforced except where the error has resulted in manifest injustice. Errors can usually be corrected in the trial court, particularly in a bench trial, without the necessity of appeal. Because our function is to review the rulings of the trial court, rather than superintend the proceedings, we will notice error for which there has been no timely objection only when necessary to satisfy the ends of justice.

Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989) (citation omitted).

It is true that "[a] summons must describe the offense charged. Rule 3A:4(b). This description must comply with Rule 3A:6(a), which provides that an indictment must give an accused notice of the nature and character of the offense charged against him." Williams v. Commonwealth, 5 Va. App. 514, 516, 365 S.E.2d 340, 341 (1988). It is also true that, in this case, the summons failed to meet this test by its failure to reference Code § 3.1-418. Indeed, it charged only an offense under Code § 3.1-398.1 – a statute that, *standing alone*, does not create a criminal offense. See Cook v. Commonwealth, 20 Va. App. 510, 513, 458 S.E.2d 317, 319 (1995) ("[A] crime is made up of two parts, forbidden conduct and a prescribed penalty.").

- 16 -

However, it is equally true that both parties understood Parker to be *charged* with a criminal offense pursuant to *both* Code §§ 3.1-398.1 and 3.1-418. Although, as the dissent accurately points out, the Commonwealth stated during argument on Parker's motion to dismiss that she was not charged with a violation of Code § 3.1-418 and the judge responded, "she's not charged with that," Parker continued to argue the Commonwealth's failure to comply with Code § 3.1-418 throughout the trial. Moreover, Parker was explicitly sentenced pursuant to "[Code § 3.1-]418." Perhaps more significantly, Parker continues to argue on appeal that the Commonwealth "fail[ed] to prove a 'demand' under [Code §] 3.1-418." Thus, the record belies the dissent's assertion that the trial court rendered a formal "ruling" that Parker was not charged with an offense pursuant to Code § 3.1-418. Indeed, the trial court's ruling on Parker's motion to dismiss was not based upon the application or non-application of Code § 3.1-418.

In addition (as discussed more fully below in connection with our holding on the merits of the issues presented), unlike the cases relied upon by the dissent, Parker's *conviction* pursuant to both subsections was fully supported by the evidence and, thus, did not allow the trial court to convict Parker of otherwise innocent conduct. Cf. Bundy v. Commonwealth, 220 Va. 485, 488, 259 S.E.2d 826, 828 (1979) (reversing a conviction where the "jury was given free rein either to convict the defendant of [a] no-longer existing offense . . . or to convict him of" an existing offense, *and the evidence supported only the conviction under the non-existent offense*); Ball v. Commonwealth, 221 Va. 754, 758-59, 273 S.E.2d 790, 793 (1981) (reversing a conviction for capital murder where the defendant was "convicted of a crime of *which under the evidence* he could not properly be found guilty" (emphasis added)); Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991) (reversing a conviction because the judge's "instruction omitted some essential elements of the offense" *and "no evidence was produced relating to those elements"* (emphasis added)).

Accordingly, we do not find this case to represent an "extraordinary situation" under which we must invoke an exception to Rule 5A:18 to enable us to attain the ends of justice. Brown, 8 Va. App. at 131, 380 S.E.2d at 10; Phoung v. Commonwealth, 15 Va. App. 457, 463, 424 S.E.2d 712, 716 (1992).

Parker's final contention regarding the validity of this Court's judgment in McClellan v. Commonwealth, 39 Va. App. 759, 576 S.E.2d 785 (2003), must also fail. Even assuming, although we do not here decide, that Parker has some standing to collaterally attack this Court's decision in McClellan, it is clear that Parker's claim does not equate to a subject matter jurisdictional argument rendering the judgment void. Indeed, Parker raises no issue concerning this Court's subject matter jurisdiction over the class of the case reviewed in McClellan, but only argues that this Court lacked the authority to exercise jurisdiction in that particular case. Such a claim, if true, would merely render the judgment voidable, and not void for want of subject matter jurisdiction. See Nelson, 262 Va. at 281, 285, 552 S.E.2d at 75, 78.[9] Based upon the above discussion, we deny each of Parker's respective motions.

_____

[9] In addition, we note that our decision in McClellan reflects that Parker's counsel also represented McClellan in her appeal before this Court. See McClellan, 39 Va. App. at 759, 576 S.E.2d at 785. Nevertheless, in that case, McClellan's counsel failed to raise the issues now raised by Parker in an attempt to collaterally attack that judgment. Thus, even assuming (although we do not have the record from that case before us on this unrelated appeal) that the circuit court judgment in that case and, thus, this Court's judgment, were "voidable" because of some procedural or technical error, neither the circuit court, nor this Court were "bound to declare void what theretofore had been merely voidable." Nelson, 262 Va. at 285, 552 S.E.2d at 78. Indeed, Parker's motion in this regard – in fact, all of her motions filed after her initial briefs on appeal – appear to be repeated attempts to correct her counsel's past oversights by raising entirely new issues on appeal. While the temptation to cast such omissions or oversights on the part of counsel in the light of "jurisdictional" defects, and thus, to seek an unlimited and unrestrained avenue of review, may be irresistible - we admonish counsel that fairness to the opposing party and the orderly consideration and disposition of the cases before us mandate adherence to the procedural rules of this Court. This includes requesting leave of Court to expand the issues presented, to exceed the page limit for briefing, or to otherwise deviate from the Rules of Court. See Rules 5A:12; 5A:19.

- 18 -

B.

Turning to the merits of Parker's Questions Presented on appeal, Code § 3.1-392 states as follows:

> It shall be the duty of each attorney for the Commonwealth, to whom the Commissioner reports any violation of this article, to cause appropriate proceedings to be instituted in the proper courts without delay and to be prosecuted in the manner required by law. *Before any violation of this article is reported to any such attorney for the institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views before the Commissioner or his designated agent, either orally or in writing, in person or by attorney, with regard to such contemplated proceeding.*

(Emphasis added).

Parker contends that because the only notice she received, the November 2000 notice, alleged a refusal to permit entry for inspection (a violation under Code § 3.1-388) VDACS could not report a violation of Code § 3.1-398.1 without first providing her with yet another notice and opportunity to be heard. Doing so, Parker argues, effectively deprived her of due process and thereby deprived the court of jurisdiction to hear the matter. We disagree.

The Due Process Clauses of the Federal and Virginia Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Va. Const. art. I, § 11. Thus, "procedural due process guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard." Etheridge v. Medical Center Hospitals, 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989). This particular guarantee does not create a constitutionally protected interest; instead, the purpose of the guarantee is to provide procedural safeguards against a government's arbitrary deprivation of certain interests. Id. Accordingly, the rule "guarantees that a person shall have reasonable notice and opportunity to

- 19 -

be heard *before any binding order can be made affecting the person's rights to liberty or property*." McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995) (emphasis added).

In the present case, Parker has pointed to no liberty or property interest of which she was deprived by VDACS in merely reporting an allegation of criminal activity to the Commonwealth's Attorney. Indeed, Parker does not allege that VDACS entered any "binding order" which affected her rights in any manner. Moreover, Parker does not contend that she was denied due process with regard to the criminal proceedings which took place below. The record demonstrates that Parker was present during trial, was allowed to testify in her own behalf, and to cross-examine the Commonwealth's witnesses. Thus, we find no error in the trial court's determination that the facts at issue reflected no deprivation of due process to Parker.

We further find no error in the determination of the trial court that VDACS complied with the charge of Code § 3.1-392. In fact, the plain language of Code § 3.1-392 requires VDACS to do nothing more than notify Parker of "any violation" of the statute, and provide her with an opportunity to be heard, prior to reporting the violation to the Commonwealth's Attorney. "Notice" of an alleged criminal violation generally contemplates sufficient information to give the accused notice of the nature and character of the accusations against him or her, so that he or she may adequately prepare to defend the allegations. Griffin v. Commonwealth, 13 Va. App. 409, 411, 412 S.E.2d 709, 711 (1991). Such "notice" was clearly provided here.

Code § 3.1-398.1 provides that it is a violation of the Virginia food and beverage laws for any person to "operate a food manufacturing plant, food storage warehouse, or retail food store until it has been inspected by the Commissioner." In early 2000, VDACS began contacting Parker "about trying to work with her to inspect her farm, to get it in compliance, because it was not under inspection." Agents from VDACS even mailed Parker information concerning the

Commonwealth's food and beverage laws and appropriate compliance. Several months after doing so, agents attempted to inspect Parker's establishment, specifically informing her that the Commonwealth must have the opportunity to inspect any establishment "manufacturing products that are being offered for sale for food." After again providing Parker with information concerning compliance with food and beverage laws, VDACS notified Parker of its intent to report her violations to the Commonwealth's Attorney. In particular, in its letter to Parker of September 8, 2000, an agent of VDACS notified her that refusal to permit "attempted inspection of [her] goat cheese manufacturing operation" represented "a serious violation of the Virginia Food Laws." Parker did not attend the hearing provided by VDACS, but responded by letter, indicating that she was no longer making "goat cheese for sale," but that she would notify VDACS if she intended to do so in the future. VDACS did not pursue charges against Parker at that time, but did so only after Parker was observed selling her products, without having notified VDACS of her operation.

Although the main thrust of VDACS's November 8, 2000 letter to Parker was her refusal to permit an inspection, a violation of Code § 3.1-388, both the letter and VDACS's continued communications with Parker sufficiently put her on notice that her "operation" of such a plant, without an inspection, was a violation of the law. VDACS provided Parker with an opportunity to present her views as to this ongoing communication, and Parker did so by letter. There was simply no requirement, under the statute, that VDACS notify Parker of these potential violations yet again, when she was observed engaging in the exact same questioned activity, less than one year after the initial notice and hearing had been provided.

C.

We further find no merit in Parker's contention that it must be the Commissioner of VDACS who personally reports such alleged violations to the Commonwealth's Attorney.

Although Code § 3.1-392 states that "[i]t shall be the duty of each attorney for the Commonwealth, to whom the Commissioner reports any violation of this article, to cause appropriate proceedings to be instituted . . . ," the statute does not explicitly require the Commissioner to personally report such violations, and does not bar the Commissioner from complying with this duty through designated agents. Code § 3.1-392; see also Code § 2.2-604.

Moreover, several code sections throughout Chapter 20 indicate that the Commissioner may carry out his or her duties through designated agents.[10] Indeed, Code § 3.1-404 provides that:

> It shall be the duty of the Commissioner to make a complaint against the manufacturer or vender of any such food or drink or dairy products as are adulterated, impure or unwholesome, in contravention of the laws of this Commonwealth, and furnish all evidence thereof to obtain a conviction of the offense charged. The Commissioner, *or any person appointed by him for that purpose*, may make complaint and cause proceedings to be commenced against any person for enforcement of the laws relative to adulteration, impure or unwholesome food or drink, and in such cases he shall not be obliged to furnish security for costs.

(Emphasis added.); see also Code § 2.2-604.

> In the construction of statutes, the courts have but one object, to which all rules of construction are subservient, and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which are to be gathered by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation.

Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914); see also Waller v. Commonwealth, 192 Va. 83, 89, 63 S.E.2d 713, 716 (1951); The Covington Virginian, Inc. v. Woods, 182 Va. 538, 548-49, 29 S.E.2d 406, 411 (1944).

---

[10] See e.g. Code §§ 3.1-383, 3.1-385, 3.1-385.6, 3.1-391, 3.1-399, 3.1-406, 3.1-408, 3.1-411, 3.1-414.

Considering these statutes *in pari materia*, it is clear that the legislature intended the Commissioner to designate agents for the purpose of aiding him or her in carrying out the duties set forth in the Virginia food and beverage laws. To hold otherwise would render the statute absurd, creating a situation where the Commissioner must act personally in many instances, with no ability to delegate authority and responsibility in carrying out his or her legislative charge. See Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992) ("The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.").

Accordingly, we find no error in the trial court's decision to deny Parker's motions to dismiss and strike in this regard. Further, because we find no error in the judgment of the trial court that VDACS complied with the relevant statutes, we do not address Parker's claim that the circuit court lacked jurisdiction on these grounds.

D.

Turning to Parker's next contention, we note first that this Court has previously held that a home kitchen, similar to Parker's, may constitute a "food manufacturing plant" within the context of Code § 3.1-398.1. McClellan, 39 Va. App. at 767, 576 S.E.2d at 785. Indeed, since Parker filed her briefs on appeal, the Supreme Court of Virginia has refused the petition for appeal in that case. We thus need not address further her argument that her home could not constitute a "food manufacturing plant" within the meaning of the statute.

We find that Parker's next allegation, that the Commonwealth failed to prove she actually manufactured the cheese, versus simply selling it, is baseless. The evidence below clearly established that Parker sold the cheese, that she told the VDACS agent that she made the product

by "infusing" the cheese with oil, and that the label on the product bore an address for the Sassy Springs Farm in Gloucester.

As we stated in McClellan, "manufacturing requires 'transformation of a raw material into an article of substantially different character.'" Id. at 766, 576 S.E.2d at 788 (quoting Commonwealth v. Orange-Madison Coop., 220 Va. 655, 658, 261 S.E.2d 532, 534 (1980)); see also Green v. Commonwealth, 266 Va. 81, 104, 580 S.E.2d 834, 847 (2003) ("When reviewing the sufficiency of evidence on a question of fact, we consider the evidence in the light most favorable to the prevailing party below, in this case the Commonwealth, and accord that party's evidence all reasonable inferences."); see also Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001) ("When reviewing the sufficiency of the evidence after a conviction, we consider that evidence in the light most favorable to the Commonwealth, and we affirm the conviction unless it is plainly wrong or without evidence to support it."). We find the evidence here sufficient to support the fact finder's determination that Parker "made" the cheese product or "manufactured" it.

For this same reason, Parker's contentions (raised in these specific terms for the first time on appeal) that the trial court lacked "territorial jurisdiction" because the Commonwealth failed to prove the product was manufactured in Virginia and that venue was improper are likewise without merit. We thus find no error in the trial court's refusal to grant her motions to dismiss and strike in this regard. See Gordon v. Commonwealth, 38 Va. App. 818, 822-23, 568 S.E.2d 452, 454 (2002) ("[W]here the defendant claims that the evidence failed to prove that the offense occurred in the Commonwealth, we have found the claim is not subject to waiver."). Indeed, Parker explicitly informed VDACS's agent that she made the products and the products admitted as exhibits bore a label showing the Sassy Springs Farm's address in Gloucester – the same place where Parker resided and manufactured such products less than one year earlier. See Code

- 24 -

§ 19.2-244 ("Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed.").

E.

Finally, Parker contends that the Commonwealth failed to prove that VDACS "demanded" that Parker comply with Code § 3.1-398.1. Parker contends that such a "demand" is required pursuant to Code § 3.1-418. While we agree that a demand is required as a prerequisite to prosecution, we find no error in the trial court's implicit determination that such a "demand" was made in this case.

As stated above, Code § 3.1-418 provides that "[a]ny manufacturer, dealer or person who refuses to comply upon demand with the requirements of Chapters 20 (§ 3.1-361 et seq.), 21 (§ 3.1-420 et seq.), and 30 (§ 3.1-867 et seq.) of this title . . . shall be guilty of a misdemeanor . . . ." VDACS continually notified Parker that she could not operate a manufacturing establishment and offer her cheeses for sale unless she complied with Virginia food and beverage laws, including permitting an inspection of her facility. Such notification, coupled with VDACS's demand to inspect Parker's facility, its certified letter to her concerning her alleged violation of the food laws, and the related hearing on the matters, clearly satisfied a "demand" as contemplated by Code § 3.1-418.

Accordingly, we find no error in the decisions of the trial court to deny Parker's motions on these grounds. We thus affirm Parker's conviction.

Affirmed.

Benton, J., dissenting.

The trial judge convicted Brenda Parker of a criminal misdemeanor offense for violating a statute that does not designate the prescribed conduct as a criminal offense. I would reverse the conviction and dismiss the warrant.

I.

The record established that a misdemeanor summons charged Brenda Parker with "unlawfully [o]perat[ing] a food manufacturing plant without it having been inspected by the Commissioner [of Agriculture] . . . in violation of [Code § ] 3.1-398.1." In pretrial motions and argument, Parker's attorney contended that a criminal misdemeanor charge could be imposed only if the judge "read[s] [Code § ] 3.1-398.1 with [Code § ] 3.1-418." He moved the judge to dismiss the warrant and argued that no criminal offense existed because the indictment did not allege a demand for inspection. See Code § 3.1-418 (providing, in pertinent part, that "[a]ny . . . person who refuses to comply upon demand with the requirements of Chapter 20 (§ 3.1-361 et seq.) . . . shall be guilty of a misdemeanor"). The prosecutor responded that Code § 3.1-418 was not implicated because "[Parker is] not charged under that." The judge, confirming the prosecutor's statement, then ruled, "She's not charged with that," and denied the motion. The prosecutor's statement and the judge's ruling unambiguously established that Parker's trial encompassed no more than the conduct alleged in the warrant and the application of Code § 3.1-398.1.

At the conclusion of the Commonwealth's evidence, the judge found the following facts in overruling Parker's motion to strike the evidence:

> So the fact that she refused an inspection was not the thrust of what the officers are doing. What they want to find out is about her operation and explain to her she needs to be inspected before she can proceed. If it was simply the failure to inspect that they were

- 26 -

[alleging] to let them in, then they wouldn't have dropped it, because any violation that occurred had already occurred.

The judge convicted Parker of violating Code § 3.1-398.1 and later entered a conviction order that provides as follows:

This day came the defendant, Brenda Parker, . . . who stands charged with a misdemeanor, to-wit: "Operate a food manufacturing plant without it having been inspected by the Commissioner" . . . .

After hearing argument of counsel, the Court finds the defendant GUILTY of the following offense:

| CASE NO. | OFFENSE DESCRIP. | OFFENSE DATE | VA CODE SECT. |
|---|---|---|---|
| 02-35 | Operate Food Manufact. Plant without it having been inspected by Comr. | 08-04-01 | 3.1-398.1 |

The Court sentences the defendant to:

Incarceration in jail for the term of 30 days.

A fine of $100.00

## II.

Code § 3.1-398.1 does not encompass or charge a substantive criminal offense. The entire text of the statute provides as follows:

No person shall operate a food manufacturing plant, food storage warehouse, or retail food store until it has been inspected by the Commissioner. This section shall not apply to food manufacturing plants operating under a grant of inspection from the Bureau of Meat and Poultry Inspection or a permit from the Bureau of Dairy Services of the Virginia Department of Agriculture and Consumer Services and Grade A fluid milk manufacturing plants and shellfish and crustacea processing plants operating under a permit from the Virginia Department of Health.

Code § 3.1-398.1.

Courts do not have the power to prescribe conduct as criminal where the legislature has not specified by statute that the conduct is criminal. Indeed, we have previously held that the absence of a statutorily prescribed penalty prevents a trial judge from imposing a penalty.

> "[A] crime is made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no crime." Criminal penalties "should be provided with that degree of clarity that characterizes all criminal law, to the end that its application must not be left to conjecture." If a criminal statute or ordinance does not specify a penalty, it is beyond our province to prescribe one on the assumption that the deficiency was simply an "oversight." "Defining crimes and fixing penalties are legislative, not judicial, functions."

Cook v. Commonwealth, 20 Va. App. 510, 513, 458 S.E.2d 317, 319 (1995) (citations omitted). Thus, we reversed the conviction in Cook because the "[d]efendant was . . . convicted for conduct which constituted no crime." 20 Va. App. at 514, 458 S.E.2d at 319.

Although Virginia statutorily recognizes some common law crimes by reference and specifically prescribes punishment for those common law crimes, operating a food manufacturing plant that has not been inspected is not a common law crime. Significantly, the Commonwealth points to no statute, which provides, either explicitly or by reference, that a violation solely of the provisions of Code § 3.1-398.1 constitutes a criminal offense. Indeed, at trial, the prosecutor explicitly denied relying on any other statute, especially eliminating Code § 3.1-418, and sought a conviction upon proof that Parker violated only the prohibitions of Code § 3.1-398.1. The conviction order only references Code § 3.1-398.1. This statute, however, is part of a general administrative scheme to regulate food and drinks. See Chapter 20 (Code § 3.1-361 et seq.). Within this statutory scheme, the legislature has provided various civil remedies that may be enforced when a person violates a duty proscribed by the statutes. See, e.g., Code § 3.1-398 (authorizing the Board "to promulgate regulations for the efficient enforcement of this article"); Code § 3.1-408 (authorizing seizure of food and products produced

- 28 -

or held in violation of the statutes); Code § 3.1-411 (authorizing forfeiture of food and goods). See also Code § 3.1-389 (providing, in addition to other remedies, authorization to the Commissioner to seek a temporary or permanent injunction for persons violating the statutory prohibitions).

A general characteristic of administrative law is the existence of civil remedies for violations of duties imposed by administrative statutory schemes. See Kissinger v. Reporters Committee, 445 U.S. 136, 148-49 (1980) (holding that legislatures do enact statutes with language that "merely 'proscribes certain conduct'" with the intent of "provid[ing] administrative remedies for violation of the [statutory] duty"); Volkswagen of America, Inc. v. Smit, 266 Va. 444, 448, 587 S.E.2d 526, 529 (2003) (describing a provision of the Motor Vehicle Dealers Act that makes "unlawful" a car distributor's failure to allocate monthly to the dealer the appropriate number of new vehicles and that requires the Commissioner of the Department of Motor Vehicles to make a finding of the distributor's method of allocation at the dealer's request). Similar to a myriad of other statutes, Code § 3.1-398.1 proscribes conduct that, when violated, may give rise to a civil enforcement. See e.g., Code § 51.5-41 (barring as a civil prohibition an "employer [from] discriminat[ing] in employment or promotion practices against an otherwise qualified person with a disability solely because of such disability"); Code § 40.1-51.4:4 (rendering as a civil prohibition that "it shall be unlawful for any law-enforcement agency as defined in [Code] § 9.1-500 . . . to require any employee to submit to a lie detector test . . . except . . . [when] related to a particular internal administrative investigation concerning allegations of misconduct or criminal activity"); Code § 38.2-4312 (requiring as a regulatory practice that "[n]o health maintenance organization or its representative may cause or knowingly permit the use of . . . advertising that is untrue or misleading . . . .").

In summary, Code § 3.1-398.1 is a part of an administrative regulatory scheme and the express language of Code § 3.1-398.1 does not create a substantive criminal offense. Therefore, the trial judge did not have the authority to adjudicate a violation of Code § 3.1-398.1 as a criminal offense.

III.

Because the legislature did not create Code § 3.1-398.1 to be a criminal statute without reference to some other conduct, the trial judge exceeded his power when he convicted Parker of a misdemeanor criminal offense. On several occasions, the Supreme Court has reversed criminal convictions of defendants for non-existent offenses. In Bundy v. Commonwealth, 220 Va. 485, 259 S.E.2d 826 (1979), the Court ruled as follows:

> We believe that the weapons verdict in this case . . . plainly convicts the defendant of the use of a firearm while committing, not murder, but some undesignated other felony. Under the weapons statute as it read prior to 1976, such a verdict might have been proper.
>
> \*       \*       \*       \*       \*       \*       \*
>
> [A]s a result of the 1976 amendment to Code § 18.2-53.1, the use of a firearm "while committing a felony" no longer is sufficient to constitute a violation of the statute. Now, a violation occurs only when a firearm is used with respect to the specified felonies of murder, rape, robbery, burglary, and abduction.
>
> The offense in this case and the prosecution therefor took place after the effective date of the amendment to Code § 18.2-53.1. Yet, under instructions erroneously framed to permit such action, the jury was given free rein either to convict the defendant of the no-longer existing offense of using a firearm in the commission of a felony or to convict him of using a firearm while committing murder. The jury convicted the defendant of the non-existent offense. Clearly, therefore, the defendant's firearms conviction must be reversed.

Id. at 487-88, 259 S.E.2d at 828. See also Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991) (reversing a conviction because the judge's "instruction omitted some

- 30 -

essential elements of the offense" and permitted the jury to convict Jimenez "of a non-offense"); Ball v. Commonwealth, 221 Va. 754, 758-59, 273 S.E.2d 790, 793 (1981) (reversing a conviction for capital murder because the evidence proved a homicide during an attempted robbery, which was not then one of the statutorily defined predicate offenses of capital murder); Marshall v. Commonwealth, 26 Va. App. 627, 637, 496 S.E.2d 120, 125 (1998) (noting that "we would be permitted to invoke the ends of justice exception to reverse . . . a conviction for a non-existent offense").

Simply put, a circuit court lacks the power to convict an accused criminal defendant of a "non-existent offense." A conviction of a "non-existent offense" implicates the circuit court's subject matter jurisdiction and, thus, is cognizable on a direct appeal from such a conviction. Indeed, the Supreme Court has held "that '[s]ubject matter jurisdiction is granted by constitution or statute,' that '[i]t cannot be waived,' that 'any judgment rendered without it is void *ab initio*,' and that 'lack of subject matter jurisdiction "may be raised at any time, in any manner, before any court, or by the court itself."'" Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001) (citation omitted). Nothing in the constitution or statutes of Virginia permits a judge to convict a person of a criminal offense for violating a statute that merely proscribes conduct.

Because the judge convicted Parker of a non-existent criminal offense, I would hold that the judge exceeded his jurisdictional power in so doing. I would, therefore, reverse the conviction and dismiss the warrant.